IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT N. GOLDSTEIN, | § | |
| | § | |
| Plaintiff | § | |
| v. | § | No. 3:00CV0022-P |
| | § | |
| PHILLIP ALEXANDER GORDON, | § | |
| WWW.CHEATERS.COM, | § | |
| | § | |
| Defendants | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS RESPONSE TO MOTION TO SET ASIDE THE DEFAULT JUDGMENT AND DISMISS THE ACTION FOR LACK OF PERSONAL OR *IN REM* JURISDICTION**

# TABLE OF CONTENTS

I. **INTRODUCTION**..................................................................................................1

II. **BACKGROUND** ..................................................................................................2

III. **ARGUMENT**........................................................................................................3

    A. Proceeding *In Rem* Was Proper..........................................................................3

    B. *In Rem* Jurisdiction Is Proper In This District....................................................4

    C. Service On The *In Rem* Defendant Was Proper.................................................5

    D. Plaintiff Will Be Prejudiced.................................................................................5

        a.    Plaintiff Has Been Using CHEATERS.COM For Over Nine Months As A Necessary Part Of The Television Show's Business..........................................................................................5

        b.    Laches: Rule 60(b) Requires That A Motion For Relief Be Made Within A Reasonable Time..........................................................6

    E. No Meritorious Defense.......................................................................................7

    F. Defendant Has Exhibited Culpable Conduct........................................................8

    G. The Public Policy of Finality of Judgments Will Be Disserved.........................9

IV. **CONCLUSION** .....................................................................................................9

# TABLE OF AUTHORITIES

## CASES

*Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com*, 128 F.Supp.2d 340 (E.D.Va.2001) ..................................................................................................................4

*Tomlin v. McDaniel*, 865 F.2d 209, 210 (9th Cir. 1989) ......................................................4

*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685 (9th Cir. 1988) ..................................................................................................................6

*INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir. 1987) ..................................................................................................................6

*Thompson v. American Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir. 1996) ................6

*Meadows v. Dominican Republic*, 817 F.2d 517 (9th Cir. 1987) .........................................7

*Atlanta Gas Light Co. v. Semaphore Advertising, Inc.*, 747 F.Supp. 715, 718 (S.D. Ga 1990) ..................................................................................................................7

*Whelan v. Abell*, 48 F.3d 1247 (D.C. Cir. 1995) ..................................................................8

*FSLIC v. Kroenke*, 858 F.2d 1067 (5th Cir. 1988) ...............................................................8

*Trueblood v. Grayson*, 32 F.R.D. 190 (E.D. Va 1963) .........................................................8

*Hritz v. Woma Corp.*, 732 F.2d 1178 (3rd Cir. 1984) ..........................................................8

*Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) ..........................................................................8

*Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir. 1996) ...............................................................9

## RULES & STATUTES

F.R.C.P. 60(b) .........................................................................................................................7

15 USC §1125(d)(2)(A)(ii) .....................................................................................................3

15 USC §1125(d)(2)(C) ..........................................................................................................4

15 USC §1125(d)(2)(B) ..........................................................................................................5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT N. GOLDSTEIN, | § § | |
| Plaintiff | § § | |
| v. | § | No. 3:00CV0022-P |
| | § | |
| PHILLIP ALEXANDER GORDON, WWW.CHEATERS.COM, | § § § | |
| Defendants | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS RESPONSE TO MOTION TO SET ASIDE THE DEFAULT JUDGMENT AND DISMISS THE ACTION FOR LACK OF PERSONAL OR *IN REM* JURISDICTION**

I. **INTRODUCTION**

On June 28, 2000 the Court entered a default judgment in this lawsuit and an ordered that the domain name www.cheaters.com be transferred to plaintiff, Robert N. Goldstein. At the time of the default judgment, defendant Phillip Alexander Gordon ("Gordon") was the registrant of the domain name according to the registrar of the domain name, Network Solutions, Inc.

Over 9 months after the entry of default judgment and order of transference, defendant Gordon files this Motion to Set Aside the Default Judgment on the grounds, essentially, that the Court erred in its interpretation of the law and that the plaintiff misrepresented facts and law to the Court.

Because the Court has already ordered that Gordon is not amenable to personal jurisdiction in this Court upon motion of plaintiff, plaintiff does not respond to Gordon's argument regarding same.

Plaintiff responds to this motion and contends that proceeding *in rem* was proper given the facts and the law, that *in rem* jurisdiction is and was proper in this district, and that the service on the *in rem* defendant was indeed proper. Further, plaintiff contends that the motion should be denied because, if granted, the plaintiff will be prejudiced, the defendant has proffered no meritorious defense, the defendant has exhibited culpable conduct that mitigates against granting the motion, and that the important public policy of finality of judgments will be disserved.

## II.   BACKGROUND

On January 6, 2000 plaintiff filed his Complaint alleging unfair competition. Plaintiff added www.cheaters.com as a defendant on March 3, 2000 and additionally alleged cybersquatting and trademark infringement. The Court in its order of May 30, 2000 found that plaintiff could not establish personal jurisdiction over Gordon "thereby constituting service of process as to defendant www.cheaters.com pursuant to 15 U.S.C. §1125(d)(2)(B)." No answer was filed after service by operation of the statute as ordered. Default judgment was ordered on June 28, 2000.

As stated in the First Amended Complaint, plaintiff's private investigator attempted to locate Gordon but was unsuccessful. Plaintiff first made contact with Gordon via an e-mail address "maheux@email.msn.com." (App. p. 1). This e-mail address was listed with Network Solutions as belonging to Gordon who resided at the address 24 Glenhurst Avenue, Toronto, Canada M6E1E4 CA. Plaintiff's counsel tried to make initial contact via registered international mail and sent the Summons and Complaint to this address. These correspondences were returned as unclaimed. Plaintiff reasonably believed that this address was Gordon's valid contact information. Plaintiff's

counsel contacted Gordon via e-mail at the maheux@email.msn.com on March 10, 2000 telling him that a lawsuit had been filed and to consider settling the matter. On March 10, 2000, Gordon responded with "we will defend....my Dallas attorney will contact you." (App. p. 2). Plaintiff or plaintiff's counsel never heard from Gordon until the filing of this Motion to Set Aside, over one year later.

### III. ARGUMENT

#### A. Proceeding In Rem Was Proper

The ACPA provides that a trademark owner may proceed *in rem* if the owner:

> (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); *or*
>
> (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by--
>
>> (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
>>
>> (bb) publishing notice of the action as the court may direct promptly after filing the action.

15 USC §1125(d)(2)(A)(ii) (emphasis added). Note, as defendant does in footnote 10 of its Memorandum, that the conjunction 'or' is used here so as to create a choice for the mark owner. Either (I) or (II) maybe be used to proceed *in rem*. Although the statute does not require plaintiff to meet the standards of part (II), as plaintiff has alleged in its Amended Complaint, plaintiff retained the services of a private investigator in an attempt to physically find Gordon. This was to no avail. In any event, plaintiff chose to proceed *in rem* under section (I).

Nowhere in this section of the ACPA does it state that a plaintiff must make a showing that he is unable to obtain personal jurisdiction over a defendant anywhere in the United States before choosing to proceed *in rem* under section (I). However, defendant aptly cites a case that was decided recently that speaks directly on this point. *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com*, 128 F.Supp.2d 340 (E.D. Va. 2001). This is new law from another district interpreting this section of the ACPA that was not available at the time of plaintiff's pursuance *in rem* against www.cheaters.com. Plaintiff recognizes the Court's discretion and defers to the Court without argument to decide whether *Alitalia-Linee* is controlling in this case. However, a change in applicable law after judgment has become final is not an "exceptional circumstance" justifying relief from the judgment. *Tomlin v. McDaniel*, 865 F.2d 209, 210 (9th Cir. 1989). The *Alitalia-Linee* case was decided well after the default judgment was entered.

### B. In Rem Jurisdiction Is Proper In This District

The ACPA states:

(C) In an in rem action under this paragraph, a domain name shall be deemed to have the ***situs in the judicial district in which-***

(i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; ***or***

***(ii) documents sufficient to establish control and authority regarding disposition of the registration and use of the domain name are deposited with the court.***

15 USC §1125(d)(2)(C) (emphasis added). Defendant argues that "plaintiff misrepresented the plain language of the ACPA in order to procure the default judgment" by directing the court's attention to the language in §1125(d)(2)(A). (Defendant's

Memorandum at p. 13). However, as stated the *in rem* property situs provision provided *supra*, a domain name's situs shall be in the judicial district in which certain documents establishing control over the domain name are deposited. On May 11, 2000, this Court ordered the Registrar Certificate of www.cheaters.com deposited with the Court. (App. p. 4-7). The domain name property being in the Court's registry, it was within the Northern District of Texas for the purposes of *in rem* jurisdiction under the ACPA. Thus, *in rem* jurisdiction is proper in this district.

### C.     Service On The In Rem Defendant Was Proper

Following the procedure set out in the ACPA: First, plaintiff established, and it was ordered by the Court, that plaintiff was unable to obtain personal jurisdiction over defendant Gordon. Next, the *in rem* property was situated in this judicial district. Then, service of process was effectuated by operation of law according to APCA §1125(d)(2)(B) which states:

(B)     The actions under subparagraph (A)(ii) shall constitute service of process.

"The actions under subparagraph (A)(ii)" were discussed *supra*. The Court, by its order of May 30, 2000 finding that service of process had occurred, apparently agreed that the statute had been complied with; that "the actions under subparagraph (A)(ii)" indeed occurred. (App. p. 8). Approximately one month later, well after the time for answer had elapsed, plaintiff moved this Court for a default judgment. The Court granted it on June 28, 2000.

### D.     Plaintiff Will Be Prejudiced

#### a.     Plaintiff Has Been Using CHEATERS.COM For Over Nine Months As A Necessary Part Of The Television Show's Business

If plaintiff will suffer prejudice by reopening the action, the court may deny the relief. *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685 (9th Cir. 1988). Plaintiff is the executive producer, executive officer, and shareholder in the company that produces the syndicated television program *Cheaters*. Plaintiff is the licensor of the domain name and trademark to the production company. *Cheaters* is broadcast in over 40 markets in the U.S. and in several European markets. Since the Court's order on June 28, 2000, plaintiff and *Cheaters* have been using www.cheaters.com in marketing its television show. The website utilizing this domain name is more than a mere internet presence. It is an integral part of the operation of the show. Viewers use the domain name and website to contact *Cheaters* in hopes that *Cheaters* will investigate what viewers believe is infidelity in their relationships. *Cheaters* receives many contacts via the website using this domain name from potential clients for this reason. Additionally, the website provides the public with information about the show and air times. *Cheaters* has been using the domain name www.cheaters.com for over 9 months now. To revoke it now, when the defendant has had over 9 months to do something about the default, is prejudicial to plaintiff. The delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion. *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir. 1987). The delay in this case does result in a tangible harm to plaintiff. Please also see *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir. 1996).

    b.    **Laches: Rule 60(b) Requires That A Motion For Relief Be Made Within A Reasonable Time**

Rule 60(b) provides:

The motion shall be made *within a reasonable time, and* for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

F.R.C.P. 60(b) (emphasis added). Plaintiff obviously cannot contend that defendant is not within the 1-year limitation under the Rule. However, there is a clear reasonability factor in place in the Rule. By waiting for over 9 months to file its motion, plaintiff contends that defendant has delayed the filing of this motion unreasonably to the point of constituting laches. A motion for relief is not necessarily timely because filed within 1 year after entry of judgment. It must also have been brought diligently and within a reasonable time. F.R.C.P. 60(b); *Meadows v. Dominican Republic*, 817 F.2d 517 (9th Cir. 1987); *Atlanta Gas Light Co. v. Semaphore Advertising, Inc.*, 747 F.Supp. 715, 718 (S.D. Ga 1990) (motion for relief from default was *denied because filed 10 months after* entry of default). *Atlanta Gas* posits that waiting 10 months before filing a motion for relief is unreasonable. Here, defendant waits over 9 months to file its motion for relief. Plaintiff believes this is an unreasonable delay that constitutes laches. Defendant Gordon had notice of this lawsuit 13 months before default was taken and had over 9 months after the default to file. It is difficult to believe that, assuming defendant used the domain name or even ever intended to use it, he would have realized he no longer had ownership of it sooner.

E. **No Meritorious Defense**

The party seeking relief from default bears the burden of showing it has a defense such that the result after trial might be different than that reached by default.

Failure to show such a defense is ground in and of itself for denying relief. *Whelan v. Abell*, 48 F.3d 1247 (D.C. Cir. 1995); *FSLIC v. Kroenke*, 858 F.2d 1067 (5th Cir. 1988). To demonstrate a meritorious defense, the defendant's motion should include 1.) a proposed answer, 2.) a declaration regarding facts supporting the defense, 3.) a legal memorandum concerning the legal defense. *Trueblood v. Grayson*, 32 F.R.D. 190 (E.D. Va 1963). Asserting a defense is not a high hurdle. Defendant need only show that there is a bone fide chance it will succeed at trial. *Hritz v. Woma Corp.*, 732 F.2d 1178 (3rd Cir. 1984).

Defendant chooses not to proffer a defense on the grounds that defendant was not served properly. As argued above and as the court ordered on May 30, 2000, defendant was served. Additionally, defendant draws a legal conclusion in stating its ground for not making a defense. The Court will decide, as it has already, whether service was proper.

Gordon's affidavit is not a defense. His affidavit asserts facts he contends supports his theory that neither *in rem* jurisdiction nor service were proper. It is difficult to believe that, assuming defendant used the domain or even ever intended to use the it, he would have realized he no longer had ownership of it sooner. He includes no such facts regarding his meritorious defense in his affidavit.

### F. Defendant Has Exhibited Culpable Conduct

Relief from default will be denied where it resulted from defendant's culpable conduct. *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984).

Defendant received, if not actual notice, at least constructive notice of the lawsuit on March 10, 2000 via e-mail. (App. p. 2). Relief should be denied when the defendant sits idly by and does not respond to the complaint. *Direct Mail, supra.* (plaintiff received

summons but claimed that they should not have been served on his receptionist). Defendant in his affidavit states that nobody ever asked him for his address or location. Gordon Affidavit p. 14. Defendant knew he had been sued in this district. He said that his legal counsel would be in contact. (App. p. 2). No legal counsel or anybody has ever contacted plaintiff since. Defendant avoided service. A default is willful when the defendant actively evades service. *Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir. 1996).

In his affidavit, Gordon states that he "always maintained accurate contact information with Network Solutions." Gordon Affidavit p. 13. The address Network Solutions had for Gordon regarding the internet address maheux@email.msn.com was in Canada at a time when he claims he lived in California.

### G. The Public Policy of Finality of Judgments Will Be Disserved

Although it is well settled that default judgments are generally disfavored, there does exist a competing policy concern: the public and the courts have a need for prompt handling of litigation and for compliance with procedural requirements. In the circumstances of this case, if the judgment is set aside over 9 months after it was ordered, plaintiff believes the broader policy of finality of judgments would be disserved.

### IV. CONCLUSION

Plaintiff obtained a default judgment by following the guidelines for proceeding *in rem* set out in ACPA. The Court agreed that proper procedure was followed and executed the order of default. There must be "extraordinary circumstances" to overturn a default judgment. Such circumstances do not exist here. Additionally, if the Court finds that plaintiff has been prejudiced, that there is no meritorious defense, *or* that the defendant is culpable for the default, the Court can deny the motion.

PLAINTIFF'S BRIEF IN SUPPORT OF HIS RESPONSE TO MOTION TO SET ASIDE THE DEFAULT JUDGMENT AND DISMISS THE ACTION FOR LACK OF PERSONAL OR *IN REM* JURISDICTION- Page 9

On these grounds, plaintiff urges that this Motion to Set Aside be denied.

                                    Respectfully submitted,

                                    _____
                                    Mark G. Falkin
                                    Bar No. 00797809
                                    Knox Central Place, Suite 1000
                                    4627 North Central Expressway
                                    Dallas, Texas 75205-4022
                                    Phone (214) 219-1177
                                    Facsimile (214) 528-2434

                                    ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served upon counsel for defendant on the 24th day of April, 2001, as follows:

Eugenia S. Hansen
Sidley & Austin
717 N. Harwood Ave., Suite 3400
Dallas, Texas 75201
Fax (214) 981-3400

                                    _____
                                    Mark G. Falkin