ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT N. GOLDSTEIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:00-CV-0022-P |
| | § | |
| PHILIP ALEXANDER GORDON | § | |
| and WWW.CHEATERS.COM, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT CHEATER.COM'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO SET ASIDE THE DEFAULT JUDGMENT AND DISMISS THE ACTION FOR
LACK OF PERSONAL OR *IN REM* JURISDICTION**

The arguments that are advanced by the Plaintiff are entirely without merit, and will be addressed in turn below

**I.    PROCEEDING *IN REM* UNDER THE ACPA WAS IMPROPER**

   **A.    The Plaintiff's Argument that *In Rem* Jurisdiction is Proper Under the ACPA is Untenable.[1]**

Plaintiff's tortured interpretation of the *in rem* provisions of the ACPA certainly was not the intent of Congress when the ACPA was enacted. According to Plaintiff's theory, the ACPA would permit unscrupulous Plaintiffs to deprive domain name owners of their property without due process. According to Plaintiff's interpretation of the ACPA, a Plaintiff, without even attempting to notify the domain name owner of record, could: (1) purposefully forum shop for a District Court that does not have personal jurisdiction over the registered owner of the domain name; (2) file an *in rem* action naming the domain name as the sole defendant; (3) move for the

---

[1] Plaintiff admits and the Court has already held that no personal jurisdiction exists over Defendant Philip Alexander Gordon in this Court. Therefore, the only possible basis for this Court to have jurisdiction over a defendant in this action would be under an *in rem* theory

domain name documentation to be deposited with the Court; and then (4) move for and obtain a default judgment without any opposition from the domain name owner who was unaware that an *in rem* action had been filed.

Clearly, the scheme proposed by Plaintiff is not sanctioned by the ACPA's *in rem* provisions. In fact, the use of the ACPA *in rem* provisions to avoid facing the registrant of the domain name has been flatly rejected. See *Lucent Tech. v. lucentsucks.com*, 95 F.Supp.2d 528 (E.D. Va. 2000). In *Lucent*, The Court granted Defendant lucentsucks.com's motion to dismiss finding that Plaintiff Lucent did not satisfy the *in rem* jurisdictional requirements of the ACPA. In that case, Lucent was not asserting that it was unable to obtain *in personam* jurisdiction over the domain name owner, but instead argued that the owner could not be found. Looking to the ACPA, the Court stated:

> By the express terms of Section 1125(d)(2)(A)(ii) of the ACPA, a plaintiff may proceed with an *in rem* action against a domain name *if and only if* the Court finds either that the plaintiff is unable to obtain *in personam* jurisdiction over the domain name registrant, or that the plaintiff is unable to find the domain name registrant.

*Id.* at 531. (emphasis added). The Court then rejected Lucent's *in rem* theory because Lucent was able to contact the domain name owner via mail, i.e. the owner could be found. Thus, an *in rem* proceeding under the ACPA was deemed improper.

The reasoning in *Lucent* is applicable in the present case. Plaintiff Goldstein could proceed *in rem* against cheaters.com to the exclusion of the owner Gordon "*if and only if* the Court finds either that the plaintiff is unable to obtain *in personam* jurisdiction over the domain name registrant, or that the plaintiff is unable to find the domain name registrant." Like the plaintiff in *Lucent*, Plaintiff cannot meet either condition. Indeed, Plaintiff has conceded that he was not attempting to proceed *in rem* on the basis that Gordon could not be found, nor could he because Plaintiff was in e-mail contact with Gordon and Gordon could be found at the California address on file with NSI at the time Plaintiff filed suit. Plaintiff also fails to meet the second

2

condition since *in personam* jurisdiction could be obtained over Gordon in California. *Heathmount A.E. Corp. v. Technodrome.Com*, 106 F.Supp.2d 860, 867 (E.D. Va. 2000) (An *in rem* action grounded on the absence of personal jurisdiction over the domain name owner is appropriate only where the domain name owner "is not subject to personal jurisdiction in ***any U.S. court***.") (emphasis added).

In his response, Plaintiff fails to provide any support for his nonsensical argument that the absence of *in personam* jurisdiction in this district satisfies the ACPA's *in rem* jurisdiction requirements. Plaintiff does not address the legislative history of the ACPA, perhaps because there is no argument for a possible interpretation in his favor. Congress clearly stated that the personal jurisdiction provision was intended to apply to the situation where no court in the United States could obtain jurisdiction over the defendant. (Defendant's Brief, Page 6). And as to the two well reasoned cases cited in the Defendant's opening brief, Plaintiff only mentions one of them, stating merely that it is new law from another circuit without any analysis or argument that the case was wrongly decided. (Plaintiff's Response, Page 4). As the court in *Heathmount A.E. Corp. v. Technodrome.Com*, explains and Plaintiff conveniently ignores, Congress was attempting to address the growing problem of foreign cybersquatters that the U.S. Courts were powerless to reach. *Id.* at 867. To that end, Congress included a provision that would grant U.S. Courts *in rem* jurisdiction over a domain name if the defendant was not subject to personal jurisdiction in any judicial district in the U.S. *Id.* Because Gordon is admittedly subject to personal jurisdiction in the State of California, he is not a foreign cybersquatter that U.S. courts are powerless to reach. Therefore, *in rem* jurisdiction in the instant case is inappropriate and the default judgment should be vacated.

### B. Even if Plaintiff Could Proceed In Rem, the Northern District of Texas is not the Proper Jurisdiction

Even if an *in rem* proceeding against cheaters.com was appropriate, which it is not, this judicial district is not the proper district for such action. The ACPA expressly and unequivocally

provides where an *in rem* action is to be filed; namely, "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125 (d)(2)(A). Nevertheless, Plaintiff ignores the clear language of the ACPA and asserts that the situs provision, 15 U.S.C. §1125(d)(2)(C), allows *in rem* jurisdiction to be proper in this district. Section 1125(d)(2)(C) states "[i]n an *in rem* action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which . . ." the domain name registrar is located or sufficient documents to establish control and authority are located. 15 U.S.C. §1125(d)(2)(C). But this "situs" clause does not provide that an *in rem* action can be brought in a judicial district which is the "situs" of the domain name. Indeed, the "situs" clause mentions nothing about jurisdiction over *in rem* actions. More importantly, § 1125 (d)(2)(A), which provides where an *in rem* action must be filed, does not state that an *in rem* action may be filed in any judicial district which is the situs of the domain name. To interpret the ACPA in the manner suggested by Plaintiff would render the jurisdictional provision in § 1125 (d)(2)(A) moot because the situs provision is broader than the jurisdiction provision.

In sum, if Congress had intended the situs provision to dictate where an action might be filed it could have and would have said so. Accordingly, to give purpose and meaning to all provisions in the ACPA, it is clear that the situs provision was adopted for purposes other rendering § 1125 (d)(2)(A) moot. For example, the "situs" of the subject matter of the suit has implications regarding choice of law questions See *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013 (C.D. Cal. 1998), *Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538 (11th Cir. 1983).

### C. The Northern District of Texas was not the Situs of the Domain Name at the Time the Complaint was Filed

Even if one adopts Plaintiff's erroneous theory that an *in rem* proceeding against cheaters.com could be brought in a judicial district which is the "situs" of the domain name, jurisdiction in this district is still not proper. It is a fundamental principle of Federal jurisdictional law that jurisdiction must be determined at the time the complaint was filed. *United States Fire Ins. Co. v. Villegas*, 242 F.3d 279 (5th Cir. 2001). It is indisputable that at time the Plaintiff's Complaint and First Amended Complaint were filed "documents to establish control and authority" over the domain name were not deposited with the Court. Thus, at the time the Complaint and Amended Complaint were filed this District was not the legal situs of the domain name and, hence, not the proper jurisdiction for an *in rem* proceeding even under Plaintiff's untenable interpretation of the ACPA.

Ignoring the legal requirement that jurisdiction must exist at the time the complaint is filed, Plaintiff states in his response "[t]he domain name property being in the Court's registry, it was within the Northern District of Texas for the purposes of *in rem* jurisdiction under the ACPA." (Plaintiff's Response, Page 5.). Notwithstanding the obvious untimeliness of the depositing of these records, Plaintiff's reliance on the presence of the domain name property in the Court's registry is appalling given the fraud practiced on the Court to achieve this. Specifically, Plaintiff committed fraud on the Court by filing a false "consent" motion requesting the transfer of the domain name property from NSI to the Court. Indeed, Defendant Gordon **never** saw the motion, never was consulted about the motion and certainly never consented to it

While Plaintiff's flawed jurisdiction argument based on the ACPA "situs" provision now explains why Plaintiff was desperate to have the domain name registration transferred to this Court, there is no plausible excuse for falsely representing that Defendants had consented to its motion. Plaintiff cannot argue that the motion was merely mislabeled a "Consent Motion." Indeed, beyond the false title, the first line of the motion states:

> The *parties to the above-entitled action* hereby respectfully submit this Consent Motion to deposit the original Registrar Certificate, which tenders control over the

5

domain name registration and use of CHEATERS.COM, into the Registry of the Court.

(App. to Defendants Brief at 42). The parties to the "above-entitled action" referenced above were Robert N. Goldstein, Philip Alexander Gordon, and www.cheaters.com. Again, Gordon **never** saw the motion, never was consulted about the motion and certainly never consented to it

Acting on Plaintiff's false "consent" motion, this Court ordered the domain name registration to be deposited with the registry of the Court. (App. to Plaintiff's Response at 4). Plaintiff cannot be heard to argue that the proper "situs" of the domain name and jurisdiction over the domain name is in this judicial district in light of Plaintiff's fraudulent actions that led to the transfer of the domain name property to this Court.

## II. PLAINTIFF ALSO MISREPRESENTED TO THE COURT GORDON'S WHEREABOUTS AND THE INFORMATION ON FILE WITH NSI

At <u>all</u> times relevant to this suit, NSI had accurate contact information for Gordon. When this suit was filed, NSI's records showed not only Gordon's correct address in California and his correct email address, but it also showed *his phone number*! (App. at 18). Plaintiff asserted to this Court that Gordon was in Canada and provided an address to the Court. This was the original address that Gordon filed with NSI in 1998 but this address had been updated in November of 1999 to reflect the correct California address. Incredibly, Plaintiff was able to locate the contact information once when he tried to purchase the domain name from Gordon but chose not to check the contact information when he filed suit or when he was "unable" to locate Gordon for purposes of service. This additional misrepresentation, in and of itself, is enough for this Court to set aside the Default Judgment under Rule 60(b).

## III. FAIR PLAY AND SUBSTANTIAL JUSTICE PROHIBITS THE RESULT SOUGHT BY THE PLAINTIFF

The "fair play and substantial justice" test prohibits *in rem* jurisdiction by the Northern District in this case. The *International Shoe*[2] "fair play and substantial justice" test applies to the

---

[2] *International Shoe Co. v. State of Washington*, 66 S.Ct 154, 326 U.S. 310 (1945).

application of *in rem* jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 207, 97 S.Ct. 2569, 2581 (1977). A court's jurisdiction must comply with notions of "fair play and substantial justice." This Court lacks personal jurisdiction over Gordon and the Plaintiff's only argument that *in rem* jurisdiction is proper is that the registrar's certificate was in the Court's registry. The registrar's certificate is only in the Court's registry because of a fraudulent motion filed by the Plaintiff.

As discussed above, in order to have the registrar certificate transferred to this Court, the Plaintiff filed a "Consent Motion" that was never consented to. Having the property transferred to the jurisdiction of the Court by filing a fraudulent motion surely violates traditional notions of fair play and substantial justice.

### IV.   NO MERITORIOUS DEFENSE IS REQUIRED BECAUSE THE DEFENDANTS WERE NEVER PROPERLY SERVED.

If a defendant is not properly served no showing of a meritorious defense is necessary. *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 85-87, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). To require a showing of a meritorious defense in such cases is a violation of the defendant's due process rights under the U.S. Constitution. *Id.*

Although a showing of a meritorious defense is not required, a brief discussion of available defenses is provided below.

#### A.   Plaintiff Cannot Establish the Prima Facie Elements of an ACPA Claim Because They did not Own a Famous or Distinctive Mark at the time Cheaters.com was Registered with NSI.

Plaintiff's First Amended Complaint demonstrates the Plaintiff cannot establish the prima facie elements of a claim under the ACPA. The Plaintiff cannot establish that the term "Cheaters" was a trademark, much less a famous or distinctive mark as required by the ACPA, at the time that Gordon registered "Cheaters.com" with NSI. As to alleged activities that occurred prior to Gordon's registration of "cheaters.com" on January 2, 1998, the Amended Complaint alleges only that negotiations were conducted in December of 1997. The Amended Complaint does not allege that there was a TV show that existed in December of 1997 using the name "Cheaters." The alleged negotiations do not establish trademark rights because they do not constitute trademark use. Plaintiff obviously knew that when he filed an application to register

the trademark "cheaters.com" in September of 1999, because he filed the application as an "Intent to Use" application instead of an application based on actual use of the subject mark as a trademark.

The ACPA requires that the mark be famous or distinctive *at the time* the domain name is registered. 15 U.S.C. §1125(d)(1)(A). Plaintiff only alleges that "negotiations" occurred some time in December 1997, less than a month before Gordon registered Cheaters.com. Thus, even if he has used the mark in a sufficient fashion to yield trademark rights, the mark could not have become famous or distinctive in such a short time.

### B. The Plaintiff Cannot Prove Bad Faith Intent by the Defendant.

The ACPA requires a plaintiff to prove that the defendant acted with bad faith intent to profit from the mark. 15 U.S.C. § 1125(d)(1)(A)(i). Even if the allegations in Plaintiff's Amended Complaint were assumed to be true, Plaintiff cannot possibly establish that Gordon acted with bad faith intent when he registered cheaters.com. Nowhere in the Amended Complaint does Plaintiff allege (nor could he truthfully allege) that Gordon had knowledge of the Plaintiff's alleged use of the term Cheaters before January 2, 1998. Again, the only alleged activities on the part of the Plaintiff occurring before January 2, 1998 were negotiations in December 1997 that did not involve Gordon and of which Gordon had no knowledge. Without knowledge of Plaintiff's alleged use of "cheaters" before January 2, 1998, Gordon could not possibly be found to have acted with bad faith intent to profit from Plaintiff's alleged mark. Thus, Plaintiff's own pleadings establish a meritorious defense for Defendants.

### V. Laches is Inapplicable and the Defendant has not Exhibited Culpable Conduct.

#### A. Laches may not be Used to Deny a Rule 60(b)(4) Motion that Attacks a Judgment as Void; Defendants were Well Within the One Year Time Limit Under Rule 60(b)(3).

As stated in the Defendants' Rule 60(b) motion, the default judgment is void for lack of jurisdiction and fraud. Laches may not be used to deny a Rule 60(b)(4) motion that attacks a judgment as void. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488-489 (9th Cir. 2000) Moreover, there is no time limit for attacking a judgment as void for lack of jurisdiction.

(Defendant Memorandum in Support of Motion to Set Aside Default Judgment, Pages 4-5, *citing Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998)).

As the Plaintiff notes, the Defendants are well within the 1 year time limit to file a Rule 60(b) motion to set aside the default judgment, nevertheless, Plaintiff argues that nine (9) months was an unreasonable passage of time to move to set aside the default judgment and cites a case to that effect. (Plaintiff's Response, Pages 6-7). The case law relied upon the Plaintiff is inapplicable to this situation because the defendants in the cited cases were *actually* served with process. The Plaintiff correctly states that the *Atlantic Gas* denied relief because the motion to set aside the default was filed 10 months after the judgment, but that case differs in a primary aspect.[3] In *Atlantic Gas*, the Defendant had been served with process. As previously discussed, the Defendants were never properly served in this case, therefore, the *Atlantic Gas* case is inapplicable.

**B.     Defendants have not Exhibited Culpable Conduct; Moreover, the Present Status of the Case is the Result of the Plaintiff's Culpable, Sanctionable Conduct of Filing Fraudulent Motions with the Court.**

The Defendants have not acted in a culpable manner. Moreover, the Plaintiff implies that the Defendants have actively evaded service of process and not responded to the complaint. The Plaintiff's argument that Defendants have actively evaded service of process is completely unfounded and baseless. Gordon has *always* maintained accurate contact information with NSI, Goldstein simply chose never to send service to the correct address. Additionally, the case law cited by the Plaintiff is *completely* inapplicable to this case

The Plaintiff cites *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685 (9th Cir. 1988), for the proposition that if a defendant evades service of process then he is not entitled to relief from a default judgment. In *Direct Mail*, service of process was signed for by the defendant's receptionist and the defendant attempted to argue that service was never properly completed. This is completely different from the present situation. The

---

[3] *Atlantic Gas Light Co. v. Semaphore Advertising, Inc.*, 747 F.Supp 715, 718 (S.D. Ga. 1990). Plaintiff's Response, Page 7.

9

Defendants were never served with process and there is absolutely no evidence that service was even attempted.

A case cited by Plaintiff holds:

> To be treated as culpable, the conduct of the [party] must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings.

*Thompson v. American Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir. 1996). The only culpable conduct that has taken place in this case is on the part of the Plaintiff. The Plaintiff did not inform the Court of the accurate contact information on file NSI; the Plaintiff filed a fraudulent motion with the Court, and, now relies on the results of this fraudulent motion as a basis for this Court to have jurisdiction. (Plaintiff's Response, Pages 4-5). Plaintiff is not entitled to a finding of laches. *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945) (unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief").

## VI. CONCLUSION

For the reasons states above and in the Defendants Memorandum in Support of the Motion to Set Aside the Default Judgment, the Default Judgment should be set aside and the action should be dismissed for lack of personal or *in rem* jurisdiction.

Respectfully submitted,

*William Chad Shear*

An Attorney for Philip
Alexander Gordon and
WWW.CHEATERS.COM

Attorneys for Philip A. Gordon
and WWW.CHEATERS.COM

Eugenia S. Hansen
Texas Bar No. 08929720

John A. Dondrea
Texas Bar No. 05973800

William Chad Shear
Texas Bar No. 24013493

Sidley Austin Brown & Wood
717 N. Harwood Ave. Suite 3400
Dallas, TX 75201
Telephone (214) 981-3300
Facsimile (214) 981-3400

CERTIFICATE OF SERVICE

I hereby certify that on this ___9___ day of May, 2001, I caused a copy of the foregoing **DEFENDANT CHEATERS.COM'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO SET ASIDE THE DEFAULT JUDGMENT AND DISMISS THE ACTION FOR LACK OF PERSONAL OR *IN REM* JURISDICTION** to be delivered via Federal Express to:

> Mark G. Falkin
> Knox Central Place, Suite 1000
> 4627 North Central Expressway
> Dallas, Texas 75205-4022
> *Attorney for Plaintiff Robert N. Goldstein.*
>
> Robert N. Goldstein
> 4516 Lovers Lane, # 104
> Dallas, Texas 75225

*William Chad Shear*