ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 19 2001
CLERK, U.S. DISTRICT COURT
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT N. GOLDSTEIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:00-CV-0022-P |
| | § | |
| PHILIP ALEXANDER GORDON | § | |
| and WWW.CHEATERS.COM, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
SANCTIONS PURSUANT TO RULE 11 OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

Plaintiff Robert N. Goldstein and his counsel engaged in egregious, sanctionable conduct in order to obtain ownership of Defendant Philip Gordon's domain name, cheaters.com. Plaintiff achieved this result by convincing this Court to assume *in rem* jurisdiction over the domain name and to grant a default judgment against the domain name. In furtherance of its objective, Plaintiff:

1) made flagrant misrepresentations to this Court including, *inter alia*, filing a false "Consent Motion" (for which it had obtained no consent) and relying on this false "Consent Motion" to argue to this Court that *in rem* jurisdiction was proper and that Plaintiff was entitled to a default judgment;

2) did not serve the Defendants with process, concealed from this Court Plaintiff's knowledge of Defendant Gordon's whereabouts, and affirmatively misrepresented the facts

concerning Gordon's contact information in order to convince the Court that *in rem* jurisdiction was proper; and

3) blatantly mischaracterized, misrepresented, cropped and ignored the language of the relevant statutes.

Plaintiff's conduct has caused the Defendants considerable harm. This Court granted a default judgment against the domain name cheaters.com after Plaintiff's false representations of fact and arguments of law which were clearly so incomplete and incorrect as to mislead this Court. Gordon has been deprived of his domain name and forced to hire counsel to prepare a motion and brief requesting this Court to set aside the fraudulently-obtained default judgment. Therefore, Defendants Philip Alexander Gordon and WWW.CHEATERS.COM hereby respectfully move this Court to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure against the Plaintiff: (1) ordering him to pay the Defendants' attorneys' fees and costs incurred in connection with their motion to set aside the default judgment and this motion, and (2) issuing a reprimand and other sanctions the Court deems appropriate against Plaintiff's counsel.

## I. Background Facts

The facts to each of the Rule 11 violations are discussed below.

### A. As a Basis for *In Rem* Jurisdiction, Plaintiff Filed a "<u>Consent</u> Motion" that Fraudulently Asserted that the Defendants had Consented.

Although first alleging this Court had personal jurisdiction over Philip A. Gordon, Plaintiff apparently knew, or later realized that this was untrue. Rather then bringing an action against Gordon in California (*See* discussion Section B, *infra*) Plaintiff took actions to proceed *in rem* against the domain name, cheaters. com. Because there was then no basis to assert *in rem* jurisdiction, Plaintiff attempted to fraudulently create a "basis," and in furtherance of this

objective filed a motion entitled "<u>Consent</u> Motion to Deposit Registrar Certificate into the Registry of the Court," on May 3, 2000 (hereinafter "Consent Motion"). (App. at 31). Plaintiff later argued to this Court that the documents necessary to establish control over the domain name were located in the Northern District of Texas, and that *in rem* jurisdiction was proper under the "situs" provision of the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d)(C)(ii).

Defendants dispute that the "situs" provision of the ACPA pertains to *in rem* jurisdiction. *See* discussion *infra*. Putting aside for the moment this disagreement as to whether *in rem* jurisdiction can be established under the "situs" provision, it still remains that to even attempt to establish jurisdiction under the "situs" provision, Plaintiff had to effectuate the transfer of the domain name registration to this Court. Plaintiff accomplished this transfer by falsely representing to this Court that Defendants had <u>consented</u> to Plaintiff's motion. Plaintiff cannot credibly argue that the motion was merely mislabeled a "Consent Motion." Indeed, beyond the false title, the first line of the motion states:

> <u>The parties in the above-entitled action</u> hereby respectfully submit this <u>Consent</u> Motion to deposit the original Registrar Certificate, which tenders control over the domain name registration and use of CHEATERS.COM, into the Registry of the Court.

(App. at 31) (emphasis added). The "parties in the above-entitled action" were Robert N. Goldstein, Philip Alexander Gordon, and WWW.CHEATERS.COM. Gordon **never** saw the motion, **never** was consulted about the motion, and certainly **never** consented to it.

As a result of the fraudulent Consent Motion, the Court issued an order transferring the registrar certificate from NSI to the Court's registry. The Order states, in relevant part:

> <u>Pursuant to a consent motion by the parties to this action</u>, the Court hereby ORDERS that the original Registrar Certificate, which tenders control over the

domain name registration and use of CHEATERS.COM, be deposited into the registry of the Court.

(App. at 33) (emphasis added).

As a result of this Court's order, NSI submitted the registrar's certificate to the registry of the Court. (App. at 34).[1]

### B. Plaintiff Never Served Defendant Gordon and Misrepresented to the Court his Knowledge of Defendant Gordon's Whereabouts.

Goldstein filed an original Complaint in this district naming Philip Alexander Gordon as the Defendant. The original Complaint alleges, among other things, that Gordon's possession of the "cheaters.com" domain name violated the Anticybersquatting Consumer Protection Act. Goldstein's Complaint was *never* served upon Mr. Gordon. In fact, there is no evidence in the Court's file that service of this Complaint was ever attempted.

Plaintiff's failure to serve Mr. Gordon is inexcusable. The Complaint lists an address for Mr. Gordon in Canada. When an individual registers a domain name with NSI, they are required to provide to NSI a mailing address and an email address, and to continually update that information if it should change. Gordon duly informed NSI of his contact information and NSI's records indicate, at the time the complaint was filed, that Mr. Gordon's correct address was 333 Washington Blvd. #355, Marina del Rey, California, 90292, and that his email address was pg@myplace.com. (App. at 97). Contact information is easily accessible on NSI's website and is located on the same page as the identity of the domain name owner. (App. at 1-2). Yet, the Court was not made aware of the California address by the Plaintiff. Instead, the Plaintiff indicated to the Court that Gordon was a nonresident alien who could not be found, even in Canada. This outdated address information even appears on the Summons issued by the Clerk,

---

[1] It is interesting to note that the registrar's certificate contains the correct California contact information for Mr. Gordon. (App. at 34). Plaintiff never brought this to the Court's attention although this information would surely

(App. at 16), apparently as a result of information provided by Plaintiff. Mr. Gordon was, in fact, a California resident at the time the suit was filed and remains so, and Plaintiff was or should have been aware of the NSI Contact information. Plaintiff's representation that he could not locate Mr. Gordon after diligent efforts is simply incredible and without merit.

Plaintiff knew how to contact Mr. Gordon but intentionally misrepresented to the Court that the domain name owner's whereabouts were unknown to Plaintiff. Indeed, on March 10, 2000, Mr. Falkin, the attorney for Robert N. Goldstein, sent an email to Mr. Gordon in which he stated that a Complaint had been filed in the Northern District of Texas and if Mr. Gordon did not accept $2000 for cheaters.com, then the Complaint would be served upon Mr. Gordon.[2] Mr. Gordon responded on the very same day explaining that Gordon did not believe Goldstein was the holder of exclusive trademark rights or any other right that would exclude Gordon from using the domain name, and if Goldstein wished to proceed with the lawsuit, Gordon would defend his right to use the name. (App. at 3). Even after this discussion, the Complaint was *never* served upon Mr. Gordon.

Rather than serve Gordon as he threatened in his March 10 email, Goldstein filed a First Amended Complaint on March 31, 2000, adding the domain name WWW.CHEATERS.COM as a Defendant. Despite the fact that Goldstein had been in contact with Gordon only three weeks earlier, and the fact that the contact information registered with NSI was accurate, Goldstein stated in the First Amended Complaint that (emphasis added):

> ***Although an exhaustive and diligent search of his whereabouts has been conducted, defendant Gordon's whereabouts are unknown.*** Furthermore, for the purpose of 15 U.S.C. §1125(d)(2)(A)(ii)(I), plaintiff alleges that defendant

---

have caused the Court to question the purported *in rem* jurisdiction which cannot be obtained if personal jurisdiction in any district is available.

[2] This was at least the third email that Goldstein or his attorney sent to Mr. Gordon. Mr. Gordon promptly responded to each email. Yet Plaintiff never informed the Court that he had been in contact with Gordon.

**DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO**
**RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

> Gordon has no contacts to this forum that would enable him to come under this court's personal jurisdiction. Therefore, this court does have jurisdiction over the defendant domain name, *in rem*, as provided in 15 U.S.C. § 1125(d)(A).

(App. at 20). Goldstein never mentioned to the Court that he had been in contact with Mr. Gordon for over a year, including after the initial Complaint had been filed. Goldstein's possible motive for this deceit can be readily ascertained; if he created an argument for *in rem* jurisdiction and obtained a default judgment, he could obtain ownership of Mr. Gordon's domain name without ever having served Gordon with process. Plaintiff accomplished this goal with the Court's unwitting assistance, because he made misrepresentations to the Court.

### C. Plaintiff Blatantly Mischaracterized, Misrepresented, and Ignored the Plain Language of the ACPA in an Effort to Proceed *In Rem* and Avoid Facing Defendants on the Merits.

The ACPA provides that, in limited circumstances, an *in rem* action is possible. To establish *in rem* jurisdiction, the action must be filed <u>in the judicial district in which the domain name registrar is located</u>, 15 U.S.C. § 1125(d)(2)(A), *and* meet one of two additional conditions: (1) the domain name owner cannot be subject to personal jurisdiction in <u>any</u> judicial district in the United States, 15 U.S.C. § 1125(d)(2)(A)(ii)(I); or (2) if through due diligence the plaintiff cannot find the domain name owner, then: (a) send notice of the allegation and intent to proceed *in rem* to the registrant of the domain name to the email and postal address registered with NSI; and (b) publish notice of the action as the court directs. 15 U.S.C. § 125(d)(2)(A)(ii)(II)(aa) - (bb).

Plaintiff failed to establish proper *in rem* jurisdiction because he did not file the action in the judicial district in which the domain name registrar (NSI) is located even though he knew NSI was located in Virginia. Instead, after originally alleging this District had personal

jurisdiction over Gordon, Plaintiff reversed course and alleged that the Northern District of Texas did not have jurisdiction over Mr. Gordon.[3]

As noted above, NSI is located in Herndon, Virginia, so the action was clearly filed in the wrong judicial district in contravention of 15 U.S.C. § 1125(d)(2)(A). Rather than risk transfer to Virginia, Goldstein did not bring Section 1125(d)(2)(A) to the Court's attention, but instead argued that the so-called "situs" provision (15 U.S.C. § 1125(d)(C)(ii)) provided authority for this Court to exercise *in rem* jurisdiction.[4] Proper ethical conduct requires that if an attorney knows of conflicting legal authority, he or she should bring the legal authority contra to his/her position to the Courts attention, and then argue why the contra authority is inapplicable or should be overruled. *See, e.g.,* Fed. R. Civ. P. 11 (b)(2) Instead Goldstein ignored § 1125(d)(2)(A), cropped quotations of § 1125(d) to omit this portion of the statute, and argued that if documents sufficient to establish control and authority regarding the domain name are located within a court's jurisdiction, then *in rem* jurisdiction is proper. (App. at 89-91). Thus, Plaintiff's argument not only lacks any legal support, but it is contradicted by the clear language of § 1125(d)(2)(A). Moreover, notwithstanding the baselessness of Plaintiff's jurisdiction theory, the "situs" of the domain name in this district was accomplished by Plaintiff's filing of the false "Consent Motion" discussed above, and thus this conduct is sanctionable.

Two weeks after the registrar's certificate was filed with the Court (as a result of Plaintiff's false Consent Motion) Goldstein filed a motion for a finding of no personal

---

[3] It should be noted that Goldstein chose not to press the second alternative, i.e., send notice to the contact information registered with NSI - had he chosen this alternative, Gordon would have been made aware of service because the registered Californian contact information was true and accurate.

[4] To adopt the Plaintiff's interpretation of the ACPA would render the language of § 1125(d)(2)(A) superfluous Therefore, the situs provision must have legal significance other than jurisdiction. For example, choice of law has been determined based on the location of the property. *See Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013 (C.D. Cal. 1998); *Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538 (11th Cir. 1983).

jurisdiction over Mr. Gordon. The motion clearly states "[n]either defendant Gordon nor WWW.CHEATERS.COM have been served with process." (App. at 37). Incredibly, the motion goes on to state:

> Upon information and belief, Gordon does not reside within the Northern District of Texas or within the state of Texas; Gordon has not conducted and does not conduct any business any business in Texas; Gordon has not impliedly consented to jurisdiction by owning property in Texas; no statute imposes jurisdiction over Gordon in this matter; Gordon has not voluntarily appeared in the state and been personally served.
>
> ***Furthermore, although not necessary according to 15 U.S.C. §1125(d)(2)(A)(ii)(I), plaintiff, through due diligence by way of using the services of a private bonded investigator, has been unable to find Gordon for the purposes of service.***

(App. at 38). Again, Goldstein had exchanged emails with Gordon on numerous occasions and the correct address had been deposited with the Court in the registrar's certificate. Nevertheless, in furtherance of his scheme to mislead the Court into transferring the domain name to him, Plaintiff represented to the Court that he was still unable to locate Gordon for purposes of service. (App. at 37). This led to a finding by the Court that it lacked personal jurisdiction over Gordon (App. at 40) and that service of process was complete pursuant to 15 U.S.C. § 1125(d)(2)(b). From this point, Plaintiff moved for and received a default judgment when WWW.CHEATERS.COM "never responded" to service of process.

### D. These Actions, When Viewed as a Whole, Evidence a Flagrant and Intentional Manipulation of the Judicial System.

The series of false and misleading pleadings filed by Plaintiff was part of a scheme to wrongfully deprive Mr. Gordon of his property and due process. Goldstein filed an action against Philip Gordon but <u>never</u> served him with the Complaint, despite having possession of accurate contact information. Goldstein filed an Amended Complaint to add WWW.CHEATERS.COM as a Defendant and <u>never</u> served Gordon. Goldstein then filed a

consent motion that was <u>never</u> consented to by the parties. This resulted in an order transferring the registrar certificate to the registry of the Court. Goldstein then moved for and received a finding of no personal jurisdiction over Gordon. This motion was <u>never</u> served on Gordon. Goldstein then proceeded *in rem* against the domain name, which, because of the fraudulent consent motion, was deposited in this District. Because WWW.CHEATERS.COM did not -- and could not -- respond to the lawsuit, Goldstein was awarded a default judgment and possession of the domain name.

## II. Legal Background

Rule 11(b) of the Federal Rules of Civil Procedure provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. CIV. P. 11(b).

By signing and filing a motion with the court, the attorney is certifying that he has complied with three affirmative duties:

> 1) that the attorney has conducted a reasonable inquiry into the facts which support the document;

  2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and
  3) that the modification is not interposed purposes of delay, harassment, or increasing the costs of litigation.

*Childs v. State Farm Mutual Ins.*, 29 F.3d 1018, 1023-24 (5th Cir. 1994), *citing Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 874 (5th Cir. 1988) (en banc). "Rule 11 was originally enacted in 1938 to curb tendencies toward untruthfulness in pressing a client's suit." *Childs*, 29 F.3d at 1023. If a court finds that a violation of Rule 11 has occurred, then it is within that court's power to impose sanctions over the party, the attorney, or both. FED. R. CIV. P. 11(c).

## III. Argument

### A. Goldstein's Filing of a Document with the Court that is Fraudulent on its Face is Sanctionable Conduct Under Rule 11.

As discussed above, Goldstein filed a motion with the Court that was fraudulent on its face. The Consent Motion that Goldstein filed, and now relies upon to establish jurisdiction, was never discussed with, much less consented to, by Mr. Gordon. The result of this fraud, the order depositing the registration certificate with the Court, was then the basis of Goldstein's argument for default judgment. Therefore, the default judgment was obtained by the filing of a fraudulent motion.

In a case that presents similar facts to the present situation, the court imposed Rule 11 sanctions. In *Gas Reclamation v. Jones*, 113 F.R.D. 1 (S.D. Tex. 1985), Gas Reclamation (GR) filed suit against three defendants but never served these defendants with process. *Id.* at 2. GR later filed a first amended Complaint but never served the defendants. GR then filed a third amended Complaint adding four additional defendants and caused a copy of the Complaint to be mailed to one of the defendants. "No copies of the summons or the other requisite documents

were included with this Complaint." *Id.* GR then filed a motion for default judgment with the court that contained no certificate of service as required by the local rules, in fact, GR admitted that the defendants were not served with this motion. *Id.* at 3. The court, by its own motion imposed Rule 11 sanctions against GR. The court held:

> This Court finds that Butler [the attorney for GR] lied to the Court in at least two instances. First, he lied when he swore to the affidavit accompanying his motion for entry of default judgment stating that the defendants had been properly served. Second, he lied when he told the Court that he failed to serve the other parties with a motion for entry of default judgment based on a statement from an unknown clerk. <u>It is apparent that Butler's intention was to attempt to obtain a default judgment without notice to the other side at any costs.</u>

*Id.* at 4 (emphasis added). As a result the court imposed sanctions in the form of attorney's fees.

This is analogous to the present situation. Goldstein filed multiple documents that were <u>never</u> served upon Gordon; Goldstein intentionally misrepresented facts to the Court when he filed the Consent Motion that was <u>never</u> consented to; Goldstein <u>never</u> brought to the Court's attention that he had been in contact with Gordon, and had an address in California where Gordon could be reached. As it was apparent in *Gas Reclamation*, it is apparent here that Goldstein's intention was to obtain a default judgment without notice to the other side. Thus, he succeeded in obtaining ownership of the domain name without ever having to argue the merits of his case.

Filing a fraudulent motion with the Court is sanctionable conduct under Rule 11. Goldstein told the Court that the parties had consented to the motion, when, in fact, the motion was never even discussed. This fraudulent motion resulted in an order transferring the registrar's certificate to the Registry of the Court, thereby giving the Court control over the domain name. This control was the result of a fraud played on the Court, and that fraudulent conduct should be sanctioned.

B. **Goldstein's Misrepresentation that Gordon Could Not be Found and his Failure to Serve Gordon is Sanctionable Conduct Under Rule 11.**

Goldstein filed multiple documents with the Court, yet none of those documents were ever served on Gordon. Our judicial system is an adversarial system based upon each side presenting their best arguments and the court or jury determining who is correct. Goldstein's failure to serve Gordon corrupts the foundation on which our legal system is based.

Goldstein told the Court that Mr. Gordon was a resident of Canada and he was unable to serve him, yet there is no evidence whatsoever in the Court's record that service was ever really attempted. Moreover, Goldstein never informed the Court that he and his attorney had been in contact with Gordon via email, nor did he inform the Court that he had a California address for Mr. Gordon.

Goldstein may attempt to argue that he was unaware of the California information, but this strains credibility. The registration records available from NSI clearly listed Gordon's contact information. As the exhibit in the Appendix plainly shows, the contact information is listed immediately below the domain name on NSI's website (App. at 1-2). Therefore, Goldstein should have been aware of Gordon's California address. Even if he was not aware of the California address, he was clearly notified of it when the registrar's certificate was deposited with the Court because it clearly sets forth Gordon's California address. (App. at 34). Given all of this, Goldstein still failed to serve Gordon. As the *Gas Reclamation* Court held, so too have others, that failure to serve a party may be grounds for Rule 11 sanctions. *See Dragoo v. Akard*, 186 F.3d 614, 615 (5th Cir. 1999) (imposing Rule 11 sanctions where the firm repeatedly sought default judgments on adversary Complaints that were never served on the opponents.); *Traina v. United States*, 911 F.2d 1155 (5th Cir. 1990) (imposing sanctions for failure to send service to the correct address).

Goldstein's failure to serve Mr. Gordon and representing to the Court that he could not locate Gordon for purposes of service, even when he had been in repeated contact with Gordon and had accurate contact information, constitutes sanctionable conduct under Rule 11.

### C. Goldstein Ignored the Plain Language of the ACPA when he Filed an *In Rem* Action in the Northern District of Texas.

The Northern District of Texas is not the proper judicial district for an *in rem* proceeding under the Act. Quoted below is the applicable portions of the ACPA. The portion omitted by Plaintiff in its papers filed before this court is underlined. The portion provided by the Plaintiff to the Court is italicized:

> <u>The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located</u> if--
> (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and
> (ii) the court finds that the owner --
> > *(I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1). . . .*

15 U.S.C. §1125(d)(2)(A). According to the plain language of the Act, there is only one place Goldstein could file an *in rem* civil action against Cheaters.com, <u>the judicial district in which the domain name registrar is located</u>. NSI is the domain name registrar of the domain name WWW.CHEATERS.COM. (App. at 34). NSI is located in Herndon, Virginia. Therefore, in order to proceed *in rem* under this statute, this action must have been filed in Virginia, the location of the domain name registrar.

It strains credibility to believe that the Plaintiff "misread" or "overlooked" the underlined text above when it directed the Court to the italicized portion of the statute, not once, but twice.

(App. at 19, ¶ 6, and App. at 37). The statute clearly states that an *in rem* action must be brought in the judicial district where the domain name registrar is located. Plaintiff chose to ignore this section of the statute, or at the very least, chose not to bring it to the Court's attention to avoid the case being dismissed for lack of jurisdiction. Fed. R. Civ. P. 11(b)(2) states that:

> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> ***
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

Because of Plaintiff's studied ignorance of the jurisdiction provisions of the ACPA, the Court proceeded *in rem* against cheaters.com and entered the default judgment. This conduct is sanctionable under Rule 11.

### D. Mr. Gordon and WWW.CHEATERS.COM Seek Attorneys' Fees for the Cost of this Motion as well as the Attorneys' Fees for the Cost to Set Aside the Default Judgment.

"Under Rule 11, the district court has broad discretion to impose sanctions that are reasonably tailored to further the objectives of Rule 11. Proper objectives of Rule 11 sanctions are to deter, to punish, and to compensate opposing parties. The court should use the least severe sanction that is adequate to fulfill this purpose." *Dragoo*, 186 F.3d at 616, *citing American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 533 (5th Cir. 1992).

The power to impose Rule 11 sanctions is within the inherent powers of the federal courts. *Willy v. Coastal Corp.*, 503 U.S. 131, 134, 112 S.Ct. 1076, 1078 (1992). This inherent power includes assessing attorney's fees to the movant. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46, 111 S.Ct. 2123, 2133 (1991)

> Although the "American Rule" prohibits shifting of attorney's fees in most cases, see *Alyseka Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259, 95 S.Ct. 1612, 1622 44 L.Ed.2d 141, an exception allows federal courts to exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, *id.*, at 258-259, 260, 95 S.Ct. at 1622-1623, 1623, <u>as when the party practices a fraud upon the court</u>, *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447, . . .

*Chambers*, 501 U.S. at 33, 111 S.Ct. at 2132-2133 (emphasis added); *Callahan v. Schoppe*, 864 F.2d 44 (5th Cir. 1989) (awarding attorney's fees for suing the wrong party); *Truck Tread, Inc. v. Armstrong Rubber Co.*, 129 F.R.D. 143 (W.D. Tex. 1988) *aff'd as modified*, 868 F.2d 1472 (5th Cir. 1989) (awarding attorney's fees for Rule 11 violations). As discussed above, Goldstein has committed a fraud upon this Court by filing a motion stating that the parties had consented to it, when in fact they had not; telling the Court that he was unable to locate Gordon in Canada without disclosing to the Court the California address; withholding from the Court that he had been in contact with Gordon on several occasions; and misrepresenting the plain language of the ACPA. The result of these actions was a default judgment entered against WWW.CHEATERS.COM that Mr. Gordon has had to spend considerable time and money to correct. Therefore, Goldstein should be sanctioned for his conduct and ordered to pay Mr. Gordon's cost and attorneys fees accrued to have the default judgment set aside.

## IV. Conclusion

Plaintiff has engaged in egregious conduct, including flagrant misrepresentations to the Court, filing a falsified pleading in the form of a Consent Motion, failing to serve Defendants when it knew the correct contact information for Mr. Gordon, misrepresenting to the Court the Plaintiff's knowledge of the Defendant Gordon's whereabouts, and blatantly mischaracterizing, cropping, misrepresenting, and ignoring the language of the relevant statutes. The result of this conduct has been the needless expenditure of resources, in time and money, to set aside a

judgment that was fraudulently obtained. Therefore, Defendants Philip Alexander Gordon and WWW.CHEATERS.COM hereby respectfully move this Court to invoke its supervisory authority under Rule 11 of the Federal Rules of Civil. Procedure to impose sanctions against the Plaintiff in the form of an order for the Plaintiff to pay the Defendants' attorneys' fees and costs to bring this Rule 11 motion and to have the default judgment set aside and a reprimand for the Plaintiff's conduct.

Dated this 18th day of May, 2001.

Respectfully submitted,

Eugenia S. Hansen
Texas Bar No. 08929720
John A. Dondrea
Texas Bar No. 05973800
William Chad Shear
Texas Bar No. 24013493

SIDLEY AUSTIN BROWN & WOOD
717 N. Harwood Ave., Suite 3400
Dallas, TX 75201
Telephone (214) 981-3300
Facsimile (214) 981-3400

Attorneys for Philip Alexander Gordon
and WWW.CHEATERS.COM

## CERTIFICATE OF SERVICE

I hereby certify that on this __18th__ day of May, 2001, I caused a copy of the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE** to be hand delivered via courier to:

> Mark G. Falkin
> Knox Central Place, Suite 1000
> 4627 North Central Expressway
> Dallas, Texas 75205-4022
>
> (Attorney for Plaintiff Robert N. Goldstein)

_/s/ William Chad Shear_