

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT N. GOLDSTEIN, | § | |
| | § | |
| Plaintiff | § | |
| v. | § | No. 3:00CV0022-P |
| | § | |
| PHILLIP ALEXANDER GORDON, | § | |
| WWW.CHEATERS.COM, | § | |
| | § | |
| Defendants | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

## TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................1

II.   BACKGROUND ..................................................................................................2

III.  ARGUMENT........................................................................................................3

    A. Sanctions Standards......................................................................................3

    B. Plaintiff Did Not File A False Consent Motion With The Court....................5

    C. Plaintiff Did Not Misrepresent Facts To The Court.......................................6

    D. Plaintiff Did Not Misrepresent The Law To The Court.................................9

        1.    Proceeding In Rem Was Proper...........................................................9

        2.    In Rem Jurisdiction Is Proper In This District....................................10

        3.    Service On The In Rem Defendant Was Proper.................................11

IV.  CONCLUSION ..................................................................................................11

# TABLE OF AUTHORITIES

## Cases

*Childs v. State Farm Mutual Ins.*, 29 F.3d 1018 (5th Cir. 1994)..........3

*Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir. 1988) (en banc)..........3

*Cooter & Gell v. Hartmarx Corp.*, 496 US 384 (1990)..........4

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 US 533 (1991)..........4

*Hudson v. Moore Business Forms*, 836 F.2d 1156 (9th Cir. 1987)..........4, 7

*Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir. 1987)..........4

*Smith Int'l, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1201 (5th Cir. 1988)..........4

*Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)..........4

*Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540 (9th Cir. 1986)..........4, 7

*Conn v. CSO Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992)..........4

*Associated Idem. Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 34 (2nd Cir. 1992)..........4

*Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104..........4, 8

*Doering v. Union County*, 857 F.2d 191, 196 (3rd Cir. 1988)..........5

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3rd Cir. 1987)..........5

*Bond v. American Medical Ass'n*, 764 F.Supp. 122, 126, fn. 3 (ND IL 1991)..........5

*Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com*, 128 F.Supp.2d 340 (E.D.Va.2001)..........6, 7

*Heathmount A.E. Corp. v. Technodome.com*, 106 F.Supp.2d 860 (E.D. Va. 2000)..........6, 7

*Smith Int'l, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1201 (5th Cir. 1988)..........7

*Lucent v. lucentsucks.com*, 95 F. Supp.2d 528 (E.D. Va. 2000)..........8

*Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2nd Cir. 1985).......9

### RULES & STATUTES

F.R.C.P. 11..................................................................................................3,5,9,

Committee Notes on Amendments to Federal Rules of Civil Procedure, 146 FRD 401, 590 (1993)..................................................................................................5

15 USC §1125(d)(2)(B)..................................................................................2, 11

15 USC §1125(d)(2)(A)(ii)................................................................................10

15 USC §1125(d)(2)(C)....................................................................................10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT N. GOLDSTEIN, | § | |
| | § | |
| Plaintiff | § | |
| v. | § | No. 3:00CV0022-P |
| | § | |
| PHILLIP ALEXANDER GORDON, | § | |
| WWW.CHEATERS.COM, | § | |
| | § | |
| Defendants | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

I.   INTRODUCTION

On June 28, 2000 the Court entered a default judgment in this lawsuit and an ordered that the domain name www.cheaters.com be transferred to plaintiff, Robert N. Goldstein. Over 9 months after the entry of default judgment and order of transference, defendant filed a Motion to Set Aside the Default Judgment on the grounds, essentially, that the Court erred in its interpretation of the law and that the plaintiff misrepresented facts and law to the Court to which plaintiff responded on April 24, 2001. As of this filing, the Court has not rendered a decision.

Defendant now files a Motion for Sanctions reiterating the essential claims made in its Motion to Set Aside. Plaintiff responds to this motion and contends that nothing plaintiff or plaintiff's counsel allegedly did or neglected to do is sanctionable pursuant to Rule 11 or any other authority because proceeding *in rem* was proper given the facts and the law, that *in rem* jurisdiction is and was proper in this district, that the service on the *in*

*rem* defendant was indeed proper, no false document was filed with the Court, no facts were misrepresented to the Court, and there was no misrepresentation of the law to the Court. The Court reviewed all the documents filed in this matter, raised no objections, did not question any of the pleadings or motions, and rendered its decision accordingly after finding all was according to law.

Further, plaintiff contends that the motion should be denied because plaintiff and his counsel proceeded under new and unsettled law, made a good faith argument in its interpretation of that new and unsettled law, and that to sanction such would chill vigorous advocacy required of attorneys in their representation of clients.

## II.   BACKGROUND

On January 6, 2000 plaintiff filed his Complaint alleging unfair competition. Plaintiff added www.cheaters.com as a defendant on March 3, 2000 and additionally alleged cybersquatting and trademark infringement under the Anticybersquatting Consumer Protection Act ("ACPA"). The Court in its order of May 30, 2000 found that plaintiff could not establish personal jurisdiction over Mr. Gordon "thereby constituting service of process as to defendant www.cheaters.com pursuant to 15 U.S.C. §1125(d)(2)(B)." No answer was filed after service by operation of the statute as ordered. Default judgment was ordered on June 28, 2000.

As stated in the First Amended Complaint, plaintiff's private investigator attempted to locate Gordon but was unsuccessful. Plaintiff first made contact with Gordon via an e-mail address "maheux@email.msn.com." This e-mail address was listed with Network Solutions as belonging to Mr. Gordon who resided at the address 24

Glenhurst Avenue, Toronto, Canada M6E1E4 CA. Plaintiff's counsel tried to make initial contact via registered international mail and sent the Summons and Complaint to this address. These correspondences were returned as unclaimed. Exibit A. Plaintiff reasonably believed that this address was Mr. Gordon's valid contact information. Plaintiff's counsel contacted Gordon via e-mail at the maheux@email.msn.com on March 10, 2000 telling him that a lawsuit had been filed and to consider settling the matter. On March 10, 2000, Gordon responded with "we will defend.... my Dallas attorney will contact you." Plaintiff or plaintiff's counsel never heard from Mr. Gordon until the filing of the Motion to Set Aside, over one year later.

### III. ARGUMENT

#### A. Sanctions Standards

By signing and filing a document with the court, the attorney is certifying that he has complied with three affirmative duties:

(1) that the attorney has conducted a reasonable inquiry into the facts which support the document;
(2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and
(3) that the modification is not interposed for the purposes of delay, harassment, or increasing the costs of litigation.

*Childs v. State Farm Mutual Ins.*, 29 F.3d 1018 (5th Cir. 1994), citing *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir. 1988) (en banc). Rule 11 sanctions are discretionary in that the court "may...impose an appropriate sanction." FRCP 11(c). Such sanctions must be reasonable FRCP 11(c)(2).

Rule 11 is intended to deter dilatory or abusive pretrial tactics and to streamline including litigation by excluding baseless filings. *Cooter & Gell v. Hartmarx Corp.*, 496 US 384 (1990); *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 US 533 (1991). Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. *Hudson v. Moore Business Forms*, 836 F.2d 1156 (9th Cir. 1987); see *Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir. 1987). If an area of law is unsettled, it is less likely sanctions will be imposed. *Smith Int'l, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1201 (5th Cir. 1988); *Hudson v. Moore Business Forms*, Inc., 836 F.2d 1156, 1160 (9th Cir. 1987). Sanctions are reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). <u>Rule 11 sanctions are not proper where a reasonable argument is made for extending the law, even if the party is in error when claiming its position is supported by existing law</u>. *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540 (9th Cir. 1986) (emphasis added). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution. Such sanctions can have an unintended detrimental impact on an attorney's career and professional well-being." *Conn v. CSO Borjorquez*, 967 F.2d 1418,1421 (9th Cir. 1992). All doubts must be resolved against sanctions. The court must determine when the argument "turns from merely 'losing' to losing *and* sanctionable." *Associated Idem. Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 34 (2nd Cir. 1992) (emphasis in original). "The court must allow parties and their attorneys to rely on their experts without fear of punishment for

any errors in judgment made by the expert." *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993). <u>It is opposing counsel's obligation to expose weaknesses in the evidence upon which an attorney relies. The conflict alone is not a sufficient basis for Rule 11 sanctions.</u> *Id.* (emphasis added). "Courts must be careful not to impose monetary sanctions so great that they are punitive-or that they might even drive the sanctioned attorney out of practice." *Doering v. Union County*, 857 F.2d 191, 196 (3rd Cir. 1988) (emphasis added).

Rule 11 motions should not be made or threatened for minor violations. If an adversary's allegations are fairly debatable, a party should not seek sanctions as a means of intimidation or to test the legal sufficiency of the allegations. See Committee Notes on Amendments to Federal Rules of Civil Procedure, 146 FRD 401, 590 (1993). The purpose of Rule 11 sanctions is to deter sanctionable conduct, not to compensate for it. Monetary sanctions may be ordered paid into the court as a penalty rather than awarded to the opposing party. Fee awards should be awarded to the opposing party only under unusual circumstances when other sanctions would not likely deter similar conduct. *Id.* at 588. Rule 11 motions are tenuous at best when the other side's position is plausible, even if it is incorrect. Lawyers are cautioned in their use of "hardball" Rule 11 motions. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3rd Cir. 1987). Sanctions motions are themselves sanctionable if filed for improper tactical purposes. *Bond v. American Medical Ass'n*, 764 F.Supp. 122, 126, fn. 3 (ND IL 1991). A court can issue sanctions *sua sponte*. FRCP 11(c)(1)(B).

**B.    Plaintiff Did Not File A False Consent Motion With The Court**

Defendant claims the Consent Motion to Deposit Registrar Certificate into the Registry of the Court filed on May 3, 2000 is a fraudulent document. Despite what counsel may argue, the word "Consent" is titular only. The document filed simply cannot be, on its face and by definition of what a "consent" or "agreed" motion is, a document consented to if the opposing party does not sign it. Neither Mr. Gordon nor his counsel's signature appears on the motion. Thus, by definition, it is not a consent motion or an agreed motion. Simply because the title of the document contains the word "consent" and that the first sentence states "the parties..." does not mean the motion is such. Only when signatures from all parties appear on the motion can it be considered a consent motion. Plaintiff counsel did not file the motion with the intent of persuading the Court that Mr. Gordon or his counsel agreed with it or consented to it. Additionally, although blind reliance on a legal form is not an excuse for attorney conduct, plaintiff's counsel thinks it is relevant that the Court know that plaintiff's counsel did use a form provided by Network Solutions that arrived with the Certificate to generate this particular "Consent" motion. Exhibit B (note that Mr. Gordon received a copy of the attached letter and the Certicate on or about April 25, 2000). Counsel admittedly made the mistake of keeping the word "consent" in the motion and in the opening sentence "the parties," thereby possibly causing confusion. However, it is difficult to believe that the Court mistook this document in light of the fact that the Court reviewed the motion and that the Court's Order is not an executed proposed order. The court drafted its own order. This claim quibbles over semantics and has no merit whatsoever.

    C.    **Plaintiff Did Not Misrepresent Facts To The Court**

Before any allegations of misrepresentation of facts are addressed, plaintiff again stresses that according to its reading of the law *at the time* (both of the cases upon which the defense relies in its Motion to Set Aside, *Alitalia-Linee* [decided January 19, 2001] and *Heathmount* [decided July 24, 2000; *Heathmount* being the case that plaintiff supposedly ignored in his Response; see Defendant's Reply to Plaintiff's Response to the Motion to Set Aside, p.3] were decided *after* the default was ordered in this case), plaintiff was not required to conduct a diligent search of Mr. Gordon's whereabouts.

Defendant's counsel can characterize plaintiff's reading and application of the law as tortured or blatantly inaccurate or what have you. Opposing lawyers will tend to differ in their reading of the law. In any event, citing "contrary" (plaintiff does not concede that *Alitalia-Linee* or *Heathmount* are contrary as those decisions did not exist at the time of the default) authority is the duty of the opposing lawyer in motion practice. In its various motions, defendant's counsel urges that it is an attorney's duty to cite opposing authority. However, "[i]t is not in the nature of our adversarial system to require lawyers to demonstrate to the court that they have exhausted every theory, both for and against their client." *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1542 (9th Cir. 1986). To fail to cite adverse authority is not sanctionable. *Id.* The APCA was new law at the time of the *in rem* procedure and default. It had only been law since November 29, 1999, 7 months before default and only 4 months before the petition was amended in this case to include the APCA claim. The APCA and its case law progeny was clearly unsettled law at the time. If an area of law is unsettled, it is less likely sanctions should be imposed. *Smith Int'l, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1201 (5th Cir. 1988); *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1160 (9th Cir. 1987).

PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS-
Page 7

Because plaintiff was not required to locate Mr. Gordon in the first place, the facts regarding his whereabouts are immaterial. However, as has been stated before, plaintiff's counsel did rely on a private investigator, an expert in his field, to locate Mr. Gordon. "The court must allow parties and their attorneys to rely on their experts without fear of punishment for any errors in judgment made by the expert." *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993). It is opposing counsel's obligation to expose weaknesses in the evidence upon which an attorney relies. The conflict alone is not a sufficient basis for Rule 11 sanctions. *Id.* Plaintiff's private investigator submitted a report to plaintiff's counsel regarding Mr. Gordon's whereabouts. In this report the investigator indicated that he, after several attempts and utilizing several methods, could not locate Mr. Gordon. Once it seemed Mr. Gordon could not be found (Mr. Gordon certainly was not divulging is whereabouts in his e-mails, though in his affidavit to his Motion to Set Aside he did state obsequiously that he was never asked his location), counsel and plaintiff decided to proceed *in rem* under the APCA as they understood the law *at that time* (pre-*Alitalia-Linee*, pre-*Heathmount*; a case the defense cites in its Reply to the response to the Motion to Set Aside is *Lucent v. lucentsucks.com*, 95 F. Supp.2d 528 (E.D. Va. 2000) was reported May 3, 2000, the very day plaintiff filed the "Consent" motion). Additionally, although plaintiff counsel's oversight of the California address contained on the Registrar's Certificate is admitted, the Registrar's Certificate was filed with the Court. The Court had the opportunity to review the Certificate, which mostly likely occurred before the Court drafted and signed the order granting its entry, and the Court, if so inclined, surely would have questioned the *in rem* jurisdiction at that time.

The Court declined to do so likely because at the time the law did not require Mr. Gordon's location be determined.

### D. Plaintiff Did Not Misrepresent The Law To The Court

The argument presented in Paragraph C applies to this claim as well and plaintiff hereby incorporates the same into this Paragraph D.

The lawyer's job is to expose weaknesses in opposing counsel's case. It is not sanctionable to merely fail to cite authority contrary to his client's position. This was unsettled, developing law at the time. Under Rule 11, the Court must look at the validity of the pleading at the time it was signed. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2nd Cir. 1985); FRCP 11(b). Plaintiff made a non-frivolous argument under the APCA. The Court agreed with plaintiff's contention then. The Court must not use the wisdom of hindsight in determining whether the pleading was non-frivolous at the time it was signed. *Id.*

To reiterate what plaintiff did to proceed *in rem* and obtain a default judgment, plaintiff once again submits the following *in light of the foregoing argument made in Plaintiff's Response to the Motion to Set Aside and herein that **the law at the time was not as it exists today***, post-*Alitalia-Linee* and *Heathmount*:

### 1. Proceeding In Rem Was Proper

The ACPA provides that a trademark owner may proceed *in rem* if the owner:

    (I)    is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); *or*

    (II)    through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by--

> (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
>
> (bb) publishing notice of the action as the court may direct promptly after filing the action.

15 USC §1125(d)(2)(A)(ii) (emphasis added). Note, as defendant does in footnote 10 of its Memorandum to its Motion to Set Aside, that the conjunction 'or' is used here so as to create a choice for the mark owner. Either (I) or (II) may be used to proceed *in rem*. Although the statute does not require plaintiff to meet the standards of part (II), as plaintiff has alleged in its Amended Complaint, plaintiff retained the services of a private investigator in an attempt to physically find Gordon. This was to no avail. In any event, plaintiff chose to proceed *in rem* under section (I).

Nowhere in this section of the ACPA does it state that a plaintiff must make a showing that he is unable to obtain personal jurisdiction over a defendant anywhere in the United States before choosing to proceed *in rem* under section (I).

### 2. In Rem Jurisdiction Is Proper In This District

The ACPA states:

> (C) In an in rem action under this paragraph, a domain name shall be deemed to have the ***situs in the judicial district in which-***
>
> (i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; *or*
>
> ***(ii) documents sufficient to establish control and authority regarding disposition of the registration and use of the domain name are deposited with the court.***

*(ii) documents sufficient to establish control and authority regarding disposition of the registration and use of the domain name are deposited with the court.* 15 USC §1125(d)(2)(C) (emphasis added). As stated the *in rem* property situs provision provided *supra*, a domain name's situs shall be in the judicial district in which certain documents establishing control over the domain name are deposited. On May 11, 2000, this Court ordered the Registrar Certificate of www.cheaters.com deposited with the Court. The domain name property being in the Court's registry, it was within the Northern District of Texas for the purposes of *in rem* jurisdiction under the ACPA. Thus, *in rem* jurisdiction is proper in this district.

### 3. Service On The *In Rem* Defendant Was Proper

Following the procedure set out in the ACPA: First, plaintiff established, and it was ordered by the Court, that plaintiff was unable to obtain personal jurisdiction over defendant Gordon. Next, the *in rem* property was situated in this judicial district. Then, service of process was effectuated by operation of law according to APCA §1125(d)(2)(B) that states:

(B) The actions under subparagraph (A)(ii) shall constitute service of process.

"The actions under subparagraph (A)(ii)" were discussed *supra*. The Court, by its order of May 30, 2000 finding that service of process had occurred, apparently agreed that the statute had been complied with; that "the actions under subparagraph (A)(ii)" indeed occurred. Approximately one month later, well after the time for answer had elapsed, plaintiff moved this Court for a default judgment. The Court granted it on June 28, 2000.

IV.  **CONCLUSION**

Plaintiff obtained a default judgment by following the guidelines for proceeding *in rem* set out in the ACPA under the law at that time. The Court agreed that the proper procedure was followed and executed the order of default. The Consent Motion filed on May 3, 2000 was not a false document because the document obviously only contains plaintiff counsel's signature. Thus, it cannot be consented to or agreed to and clearly never was intended to be such. Although the plaintiff did not need to locate the defendant under the APCA, his attempts at doing so were diligent, counsel relied on his private investigator in this regard, plead as such, and the defendant's address was in the record via the Registrar's Certificate which the Court reviewed. The law was not misrepresented in this case. This was clearly unsettled law at the time. The APCA at the time allowed the procedure for *in rem*. Attorneys can and do disagree daily on the meaning and application of the law. Merely because an argument may be a losing one does not make it sanctionable.

Nothing plaintiff or his counsel did was sanctionable in this matter. If the court orders monetary sanctions, it will absolutely put this attorney out of practice as he is a young solo practitioner operating with very limited resources at this time.

On these grounds, plaintiff urges that this Motion For Sanctions be denied.

Respectfully submitted,

*Mark G. Falkin* (signature)

Mark G. Falkin
Bar No. 00797809
Knox Central Place, Suite 1000
4627 North Central Expressway
Dallas, Texas 75205-4022
Phone (214) 219-1177
Facsimile (214) 528-2434

ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served upon counsel for defendant on the 9th day of July, 2001, as follows:

Eugenia S. Hansen
Sidley & Austin
717 N. Harwood Ave., Suite 3400
Dallas, Texas 75201
Fax (214) 981-3400

*Mark G. Falkin* (signature)

Mark G. Falkin