

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

JUL 2 4 2001

U.S. DISTRICT COURT

| | | |
|---|---|---|
| ROBERT N. GOLDSTEIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:00-CV-0022-P |
| | § | |
| PHILIP ALEXANDER GORDON | § | |
| and WWW.CHEATERS.COM, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT CHEATERS.COM'S REPLY TO PLAINTIFF'S RESPONSE TO**
**MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE**
**FEDERAL RULES OF CIVIL PROCEDURE**

Taken in their entirety, the Plaintiff's actions to date evidence a scheme to defraud the

Defendant of his property by filing false and misleading documents. Plaintiff's response does not

cure or provide adequate excuses for the sanctionable conduct outlined in Defendant's motion,

but instead compounds those offenses by advancing arguments that are wholly without merit.

There is no reasonable excuse provided (or available) for Plaintiff's false "Consent Motion," for

Plaintiff's failure to inform the Court that he was in contact with Defendant Gordon via e-mail

despite arguing that Mr. Gordon could not be found for service, or for Plaintiff's cropping of the

applicable statute governing the domain name issues involved here (the ACPA).

**I.    Plaintiff's Argument that a "Consent Motion" is not a "Consented to" Motion is**
**Sanctionable in its own Right.**

Although somewhat difficult to decipher, Plaintiff apparently contends that the filing of

the false "Consent Motion" is not sanctionable under Rule 11 because Plaintiff's counsel did not

intend to convey to the Court that the parties had actually consented to the motion to transfer



control over the domain name to this District Court.  The Plaintiff further argues, most

illogically, that no fraud was actually committed because both parties did not sign the motion.  In

other words, according to Plaintiff, a party can submit with impunity a "consent motion" or

"agreed motion" that falsely states that "*the parties*" to the action submit the "Consent Motion"

so long as the filing party does not forge another party's signature.  Plaintiff's response arguments

are absurd.  Plaintiff's representation to the Court in his "Consent Motion" that "the parties" in

the action "submit this Consent Motion" was knowingly false and misleading and beyond

reasonable justification.

       This is not a case of simple and innocent "titular" error as Plaintiff would have this Court

believe.  Indeed, in addition to the false title, the first sentence in the motion begins "[t]he parties

in the above entitled action hereby respectfully submit this Consent Motion  .  .  ."  Certainly,

Plaintiff or his attorney must have read the "Consent Motion" before filing it and having read the

motion (or its title or opening sentence) must have known that Defendant Gordon, *who Plaintiff*

*represented could not be located*, had not consented.  This is a clear case of a knowingly false

motion for which Plaintiff and his attorney must be held accountable under Rule 11.

       Throwing all logic and reason to the wind, Plaintiff argues that no fraud or deceit was

actually committed because both parties did not sign the motion.  That is, according to Plaintiff,

because both parties did not sign the motion, regardless of what it says, it cannot be a "Consent

Motion."  Thus, according to Plaintiff, the filing of a false consent motion is not fraudulent or

sanctionable so long as one party does not forge the other party's signature.  Such an argument is

beyond any semblance of logic.  "Consent" or "agreed" motions are routinely filed on the

representation by one party that such motion is agreed to or consented to by the other parties,

without the signatures of all parties.  Such a practice is widely accepted due to the efficiencies

that it provides. Because our system requires the utmost ethical behavior from those admitted to practice, it is assumed that the Court can take an officer of the Court's word on an issue. In view of this practice, if an attorney states to the Court that the parties have consented to something, it is an express representation that both parties have concurred. For Plaintiff to argue that the phrase "[t]he parties in the above entitled action hereby respectfully submit this Consent Motion . . ." does not convey to the Court that the parties have agreed is utterly frivolous and a further perpetration of sanctionable conduct. *See Dondi Properties Corporation v. Commerce Savings and Loan Assoc.*, 121 F.R.D. 284, 287 (N.D. Tex. 1988) (*en banc*) ("A lawyer owes, to the judiciary, candor, diligence, and utmost respect.").

Plaintiff's assertion that "Plaintiff's counsel did not file the motion with the intent of persuading the Court that Mr. Gordon or his counsel agreed with it or consented to it" (Pl. Resp., p. 6) is also devoid of credibility. If Plaintiff did not intend to persuade the Court to believe that Mr. Gordon or his counsel had agreed to the motion, then why did Plaintiff call the motion a "Consent Motion" and state in the motion that "The *parties in the above entitled action* hereby respectfully submit this Consent Motion . . ."? (Consent Motion, App. at 31) (emphasis added). No plausible explanation is provided or available to explain how Plaintiff or his attorney could draft and then file the subject "Consent Motion" without intending to persuade the Court into believing that Mr. Gordon had agreed to the motion. Clearly, Plaintiff intended to convey to the Court that all parties had consented to the motion just as the plain statement in the motion provides. Indeed, this is confirmed by Plaintiff's silence after the Court issued the ensuing Order stating that "Pursuant to a *consent motion by the parties* to this action, the Court hereby ORDERS that the original Registrar Certificate, which tenders control over the domain name registration and use of CHEATERS.COM, be deposited into the registry of the Court." (Court's

3

Order of May 11, 2000). The Court obviously believed that the parties had consented to the motion as its Order indicates; yet Plaintiff did nothing to correct the Court's misimpression.

Finally, Plaintiff's attempt to justify the false Consent Motion as an innocent submission of a "form" motion is unsupportable and does not excuse Plaintiff's conduct. The Consent Motion that was filed with the Court was customized to include the proper heading and include the parties' names within the body of the document itself. Thus, Plaintiff had more than cursory contact with this document - it was undoubtedly reviewed and edited by Plaintiff at least once before it was signed. To now argue that Plaintiff simply overlooked the plain text of the Consent Motion, plain text that is clearly inaccurate on its face, is incredible and does not excuse Plaintiff's conduct.

## II. Plaintiff has Intentionally Cropped the Clear Language of the ACPA to Misdirect the Court Away from the Requirements for an *In Rem* Proceeding.

Rather than take the opportunity to cure the egregious conduct outlined in Defendant's motion, Plaintiff has exacerbated it by cropping the language of the ACPA. In Plaintiff's Response he quotes a portion of the ACPA regarding *in rem* jurisdiction, but omits the first sentence of that clause which unambiguously states that an *in rem* action must be filed in the district in which the domain name registrar is located. Compare 15 U.S.C. § 1125(d)(2)(A) and Plaintiff's Brief at pages 9-10. While the Plaintiff correctly points out that attorneys often do disagree as to an interpretation of the law, our adversarial system does not authorize and should not condone the cropping of statutes or arguments that misdirect the Court's attention away from the clear language of the statute.

**III.  Plaintiff Knowingly Misrepresented or Omitted Facts to the Court.**

    **A.  Plaintiff Intentionally Withheld from the Court that he had been in Contact with the Defendant During the Pendency of this Suit.**

In addition to the false statement made regarding the "Consent Motion," Plaintiff

misrepresented his knowledge regarding Defendant Gordon's whereabouts. Plaintiff made

numerous representations to the Court, in the pleadings as well as in his responses to Defendant's

various motions, that after a diligent search he was unable to locate the Defendant. Yet, before

and after Plaintiff filed the present action, he was in contact with the Defendant via e-mail.

Despite this, Plaintiff never mentioned to Mr. Gordon in his e-mail communications that Plaintiff

was attempting to locate Mr. Gordon for purposes of service, nor did Plaintiff mention to the

Court that he was in e-mail communication with Mr. Gordon. Instead, Plaintiff represented to

the Court that he could not locate Mr. Gordon after an "exhaustive and diligent" search and then

proceeded to take action *in rem*. For Plaintiff to now argue that he did not know Mr. Gordon's

whereabouts (and even if he did, "no-harm no-foul" because the correct address made it into the

record as part of the Registrar's Certificate) is disingenuous and belied by the facts.

    **B.  Plaintiff's Repeated Mention of a Private Investigator is a Further Attempt to Misdirect the Court's Attention Away from the Requirements of the ACPA.**

Plaintiff makes repeated reference to a private investigator and in his response brief refers

to an alleged report produced by this private investigator.[1] Even if true, such references are

nothing more than an attempt to misdirect the Court's attention away from the actual

requirements of the statute. The ACPA sets forth very explicit steps that must be completed by

someone who wishes to proceed *in rem*. Regardless of whether the Plaintiff hired a private

---

[1]  To date, Plaintiff has never attached the alleged report to any motion or brief. Thus, the contents of the report, if one exists, are unknown to the Defendant and the Court. In any event, regardless of what the report says, any

investigator, Plaintiff did not follow the explicit guidelines set forth in the Act. The ACPA requires that a plaintiff may proceed *in rem* if it files the action in the judicial district in which the domain name registrar is located and the court finds that either the defendant is not subject to personal jurisdiction in any court within the United States or that through due diligence the owner of a mark was unable to locate the domain name registrant. 15 U.S.C. §1125(d)(2)(A)(ii). Under the ACPA, due diligence can only be achieved by sending notice of the alleged violation and intent to proceed *in rem* to the registrant of the domain name at the postal address **and** e-mail address provided by the registrant to the registrar and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. §1125(d)(2)(A)(ii)(II)(aa - bb).

No mention is made anywhere in the ACPA that allegedly hiring a private investigator is satisfactory to meet the due diligence requirements of the ACPA. Had Plaintiff followed the due diligence requirements set forth in the ACPA, Defendant Gordon would have been notified of the proceeding because the contact information registered with NSI was true and correct at all times during this action. Plaintiff, again, elected to disregard the clear language of the pertinent statute.

## IV.    The Court Should Impose Sanctions Jointly on the Plaintiff and his Attorney.

The Plaintiff's conduct in this case is sanctionable under Rule 11. In this case, Plaintiff filed a false "Consent Motion," misrepresented to the Court his knowledge of Mr. Gordon's whereabouts, cropped the language of the controlling statute and ignored other relevant portions of the statute. The result of Plaintiff's conduct was an ill-gained default judgment against the domain name owner who was never afforded an opportunity to defend his rights. Plaintiff's actions are sanctionable and have resulted in needless legal fees for the Defendant. Therefore,

---

reasonable investigation would have uncovered the relevant and correct e-mail and mailing address for Mr. Gordon as such information was available from the domain name registrar (NSI).

the Court should impose sanctions under Rule 11 ordering Plaintiff and his counsel who signed

the pleadings to pay the legal fees and costs incurred by Mr. Gordon (1) in vacating the default

judgment that was wrongfully entered and (2) in preparing the present motion for sanctions

under Rule 11.

Respectfully submitted,

Eugenia S. Hansen
Texas Bar No. 08929720
John A. Dondrea
Texas Bar No. 05973800
William Chad Shear
Texas Bar No. 24013493
Sidley Austin Brown & Wood
717 N. Harwood Ave. Suite 3400
Dallas, TX 75201
Telephone (214) 981-3300
Facsimile  (214) 981-3400

Attorneys for Philip Alexander Gordon
and WWW.CHEATERS.COM

DA1 192370v1

## CERTIFICATE OF SERVICE

I hereby certify that on this _24th_ day of July, 2001, I caused a copy of the foregoing

**DEFENDANT CHEATERS.COM'S REPLY TO PLAINTIFF'S RESPONSE TO**

**MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF**

**CIVIL PROCEDURE** to be delivered via Federal Express to the following:

Mark G. Falkin
Knox Central Place, Suite 1000
4627 North Central Expressway
Dallas, Texas   75205-4022
*Attorney for Plaintiff Robert N. Goldstein*

Robert N. Goldstein
4516 Lovers Lane, # 104
Dallas, Texas   75225