



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT N. GOLDSTEIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:00-CV-0022-P |
| PHILIP ALEXANDER GORDON | § | |
| and WWW.CHEATERS.COM, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court are:

1. Defendant cheaters.com's Motion to Set Aside Default Judgment for Lack of
   *in rem* Jurisdiction and to Dismiss under Fed. R. Civ. P. 12(b)(2) and (5),
   filed April 4, 2001;[1] and

2. Defendants' Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of
   Civil Procedure, filed June 19, 2001.[2]

## PROCEDURAL HISTORY

On or about January 2, 1998, Defendant Gordon registered the domain name

"cheaters.com" with Network Solutions, Inc., an internet domain name registrar and database

company. (See Pl.'s First Am. Compl. ¶ 12.) On January 6, 2000, Plaintiff Robert N. Goldstein

("Plaintiff") filed this lawsuit against Defendant Philip Alexander Gordon ("Defendant Gordon")

for engaging in unfair competition under the Lanham Act. (See generally Pl.'s Compl.) On

---

[1] Plaintiff Robert N. Goldstein filed his response brief on April 24, 2001. Defendant cheaters.com filed its reply brief on May 9, 2001.

[2] Plaintiff Robert N. Goldstein filed his response brief on July 9, 2001. Defendants filed their reply brief on July 24, 2001.

January 6, 2000, the United States District Court for the Northern District of Texas issued a summons to Defendant Gordon at an address in Canada. (*See* Def.'s App. at 24.) The summons was never served on Defendant Gordon and the Return of Service was never received by the Court.

On March 31, 2000, Plaintiff filed his First Amended Complaint and added the domain name "www.cheaters.com" as a defendant to the action. (*See generally* Pl.'s First Am. Compl.) Plaintiff asserts in his First Amended Complaint that he had been unable, after an "exhaustive and diligent search," to locate Defendant Gordon. (*See id.* ¶ 6.) Moreover, Plaintiff contends, the Court does not have personal jurisdiction over Defendant Gordon. (*See id.*) Therefore, Plaintiff urged the Court to proceed *in rem* against the domain name itself pursuant to 15 U.S.C. § 1125(d)(2)(A), which is the Anticybersquatting Consumer Protection Act ("ACPA") (*See id.* ¶ 7.) Plaintiff alleged that Defendant Gordon had illegal ownership of and was illegally using the domain name "www.cheaters.com." (*See* Def.'s App. at 44.)

On April 4, 2000, the United States District Court for the Northern District of Texas issued a summons to Defendant cheaters.com c/o Network Solutions, Inc. in Herndon, Virginia. (*See id.* at 36.) The summons was never served on Defendant cheaters.com and the Return of Service was never received by the Court. As of May 19, 2000, neither Defendant Gordon nor Defendant cheaters.com had been served with process. (*See id.* at 44.)

On May 3, 2000, Plaintiff filed a document entitled "Consent Motion to Deposit Registrar Certificate into the Registry of the Court." (*See id.* at 42.) In the motion, Plaintiff represented that "[t]he parties" were seeking to tender control of the domain name registration and use of www.cheaters.com into the Court Registry. (*See id.*) However, the only party who

consented to the motion was Plaintiff - neither defendant had signed the pleading.  (See id. at

42.)  Interestingly, despite Plaintiff's contention that he had been unable to locate Defendant

Gordon, Plaintiff attached a Registrar Certificate to the "Consent Motion" that listed Defendant

Gordon's address as 133 Washington Boulevard #355, Marina del Ray, California 90292.  (See

id. at 39.)

On May 19, 2000, Plaintiff filed a Motion for a Finding of No Personal

Jurisdiction over Defendant Phillip [sic] Alexander Gordon.  (See id. at 44-46.)  In the motion,

Plaintiff sought to have the Court declare, pursuant to § 1125(d)(2)(B), that service of process

was proper as to Defendant cheaters.com because Plaintiff could not obtain personal jurisdiction

over Defendant Gordon.  (See id.)  The Court entered an order granting the motion on May 30,

2000.

On June 28, 2000, Plaintiff sought entry of a default judgment against Defendant

cheaters.com that would entitle Plaintiff to ownership of the domain name.  (See Def.'s App. at

48-49, 51-52.)  A default judgment against cheaters.com was entered that same day and

consequently, Network Solutions, Inc. transferred ownership of the domain name

"www.cheaters.com" to Plaintiff.  (See Def.'s Mot. at 4; Def.'s App. at 50, 53)  Plaintiff is now

listed by Network Solutions, Inc. as the registrant of "www.cheaters.com."  (See Def.'s Mot. at

4.)

Nine months later, Defendant cheaters.com filed this Motion to Set Aside Default

Judgment and contends that the default judgment is void.  Defendant Gordon, in his capacity as

registrant of the domain name cheaters.com and the legal representative of Defendant

cheaters.com at the time of the entry of the default judgment, contests the invocation of *in*

*rem* jurisdiction over Defendant cheaters.com and seeks to have the default judgment set aside,

and the action against him and cheaters.com dismissed for lack of personal and *in rem*

jurisdiction.

## DISCUSSION

### I. MOTION TO SET ASIDE DEFAULT JUDGMENT.

#### A. Legal Standard.

Default judgments are not favored by the law because courts encourage trials on

the merits.  See 10A Wright and Miller, Federal Practice and Procedure §§ 2692-93 (1998).  In

fact, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to

by courts only in extreme situations." Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001).  In

ruling on a motion to set aside default judgment, a court should resolve all doubts in favor of the

party seeking relief from the judgment.  See Davis v. Parkhill-Goodloe Co., 302 F.2d 489, 495

(5th Cir. 1962); General Tel. Corp. v. General Tel. Answering Service, 277 F.2d 919, 921 (5th

Cir. 1960).  A motion to set aside a default judgment is addressed to the sound discretion of the

district court.  See McGrady v. D'Andrea Elec., Inc., 434 F.2d 1000, 1001 (5th Cir. 1970).

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a

party or its representative from any judgment, including a default judgment, on the basis of (1)

fraud, misrepresentation, or misconduct of the adverse party; (2) the judgment being void; or (3)

any other reason justifying relief from the judgment.  See Fed. R. Civ. P. 60(b).  To prevail on a

motion to set aside default judgment, a defendant must also show "good cause." See CJC

Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992); Meaux Services, Inc. v.

Dao, 160 F.R.D. 563, 564 (E.D. Tex. 1995).  Courts in the Fifth Circuit uniformly consider the

following factors when determining whether good cause exists: whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. Id. These factors are not "talismanic," and the Court may consider others. Id.[3]

**B. Void Judgment.**

Defendant contends the Court should set aside the default judgment because the judgment is void. (See Def.'s Mot. at 4-5.) Courts look to two factors to determine voidness: (1) whether the court lacks jurisdiction over the subject matter or the parties or (2) if the court acted in a manner inconsistent with due process. See Carter v. Fenner, 136 F.3d 1000, 1006 (5th Cir. 1998). Defendant contends that the default judgment should be rendered void and set aside because the Court lacked *in rem* jurisdiction over Defendant cheaters.com.

The ACPA provides two avenues for suing a defendant in a trademark action. A trademark owner may proceed "either *in personam* against an infringer, or in certain circumstances where this cannot be done, the owner may proceed *in rem* against the domain name; a mark owner may not proceed against both at the same time." Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com, 128 F. Supp. 2d 340, 344 (E.D. Va. 2001). A trademark

---

[3] An additional factor that generally influences a court's exercise of discretion is its assessment of the parties' good faith or lack thereof. See 10A Wright & Miller, Federal Practice and Procedure § 2693. For instance, when a party appears unduly anxious to win by default, the court may be generous toward the party moving for relief. Id. "On the other hand, when the nondefaulting party endeavors to encourage the other party to respond, provides sufficient opportunity for the opponent to correct the default, or does not press too rapidly for the entry of the default and the subsequent judgment, a court typically will conclude that there is no reason to give the defaulting party relief." Id.

Plaintiff identified cheaters.com as a defendant in his Amended Complaint, dated March 31, 2000. On May 19, 2000 Plaintiff sought dismissal of Defendant Gordon, a necessary act for the *in rem* action against cheaters.com to stand. See 15 U.S.C. § 1125(d)(2)(A). On May 30, 2000, the Court granted Plaintiff's motion to dismiss Defendant Gordon; an act that the Court believed constituted service of process on Defendant cheaters.com pursuant to Plaintiff's representations and in accordance with § 1125. Defendant cheaters.com thus had 20 days from May 30, 2000 to answer the amended complaint in accordance with Federal Rule 12(a). On June 28, 2000, a mere eight days after the expiration of the answer deadline, Plaintiff sought a default judgment against Defendant cheaters.com. This immediate action could be interpreted as constituting bad faith in seeking the default judgment.

owner may file an *in rem* cause of action only where the court finds that the owner of the mark

(a) is not able to obtain *in personam* jurisdiction over a person who would have been a defendant

in the action or (b) through due diligence was not able to locate the person who would have been

a defendant in the action.  15 U.S.C. § 1125(d)(2)(A)(i)-(ii).  In other words, the ACPA provides

for *in rem* jurisdiction against a domain name only in those circumstances where *in personam*

jurisdiction is not available or where the individual defendant cannot be located after a diligent

effort.

  The ACPA provides that a trademark owner "may file an *in rem* civil action

against a domain name in the judicial district in which the domain name registrar, domain name

registry, or other domain name authority that registered or assigned the name is located if" the

court finds that the owner "is not able to obtain in personam jurisdiction over a person who

would have been a defendant in a civil action under paragraph 1."  15 U.S.C. §

1125(d)(2)(A)(ii)(I).[4]  Although the statute does not explicitly address whether the alleged mark

owner must disprove the existence of *in personam* jurisdiction over the defendant in *any* judicial

district in the United States or only in the forum where the domain name registrar is located,

courts have held that the alleged mark owner must show the absence of *in personam* jurisdiction

in *any* judicial district in the United States.  See Alitalia-Linee, 128 F.Supp.2d at 347 n.14;

Heathmount A.E. Corp. v. Technodome.Com., 106 F. Supp. 2d 860, 867 (E.D. Va. 2000).[5]

---

[4] Defendant's discussion about § 1125(d)(2)(A)(ii)(II) is irrelevant because Plaintiff chose to proceed *in rem* pursuant to § 1125(d)(2)(A)(ii)(I), not (II), of the statute.  (See Def.'s Mot. at 6-7; Pl.'s Am. Compl. ¶ 6.)

[5] Contrary to Plaintiff's argument, the requirement that a mark owner establish that the registrant of the domain name is not subject to personal jurisdiction in any United States court is not a "change" in the law - it is merely an interpretation of the law.  (See Pl.'s Resp. at 4.)

Courts have so held because the statute was designed to provide an avenue for relief against foreign-resident cybersquatters. See Heathmount, 106 F. Supp. 2d at 868 (for a discussion on the legislative history of the *in rem* provision of the ACPA).

In this case, Plaintiff has failed to demonstrate that Defendant Gordon was not subject to *in personam* jurisdiction in any judicial district in the United States. In fact, Defendant Gordon is admittedly subject to personal jurisdiction in the State of California. (See Def.'s App. at 12-13.) Moreover, David M. Graves, the Vice President of Network Solutions, Inc., declared under penalty of perjury in April 2000 that his company's records indicate that Defendant Gordon's address is 333 Washington Blvd. #355, Marina del Rey, California 90292. (Id. at 39.)

Plaintiff would have been able to maintain an *in rem* action against cheaters.com *only if* Plaintiff could not obtain personal jurisdiction over Defendant Gordon. See 15 U.S.C. § 1125(d)(2)(A)(ii)(I). Because Defendant Gordon is subject to personal jurisdiction in the United States in the State of California, it was improper for Plaintiff to proceed *in rem* against Defendant cheaters.com. Consequently, the Court could not assert jurisdiction over Defendant cheaters.com and the default judgment shall be rendered void.

### C. Good Cause Exists.

The Court's inquiry does not end with a finding of voidness. The Court must next evaluate whether "good cause" exists for setting aside the default judgment. See CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992). The factors the Court must consider are (1) whether the default resulted from excusable neglect; (2) whether setting aside the entry of default or the default judgment would prejudice the adversary; and (3) whether a meritorious

defense is presented.  Id.

### 1. Meritorious Defense.

Generally, with a motion to set aside a default judgment, the movant must

demonstrate that the outcome of the lawsuit may be different than if the default judgment is

allowed to stand.  See Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 403 (5th Cir.1981).

Therefore, in most cases, the court will require the movant to demonstrate a meritorious defense

to the action as a prerequisite to vacating the default judgment.  See CJC Holdings, Inc, 979 F.2d

at 64.  However, when a judgment is void, no other defense to the action need be shown.  See

Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 86 (1988); St. Paul Surplus Lines Ins. Co. v.

Davis, 983 F.2d 1057 (4th Cir. 1993) (Text in Westlaw No. 91-2213) (If a defendant's

"jurisdictional challenge is meritorious, it would invalidate the default judgment, and no other

reason to vacate the default would need to be shown"); Gray v. Permanent Mission of the

Peoples Republic of the Congo to the United Nations, 443 F. Supp. 816, 821-22 (S.D.N.Y.); 10A

Wright & Miller, Federal Practice and Procedure § 2697.

### 2. Excusable Neglect.

To merit relief from default judgment, a party must show that its failure to file a

timely answer or otherwise defend resulted from excusable neglect.  See CJC Holdings, Inc., 979

F.2d at 64.[6]  Plaintiff contends that Defendant exhibited culpable conduct because, although

Defendant did not receive actual notice of the lawsuit through proper service, Defendant did

have constructive notice of the lawsuit through his receipt of e-mail communications from

------

[6]  Before CJC Holdings, Fifth Circuit held that courts should inquire as to whether the default was
"willful."  CJC Holdings, 979 F.2d at 64.  However, in CJC Holdings, the Fifth Circuit instructed that in all future
cases, the district court should apply an "excusable neglect" standard.  Id.

Plaintiff. (See Pl.'s Resp. at 8-9.) According to the evidence before the Court, Plaintiff's

counsel sent an e-mail to Defendant Gordon on March 10, 2000 stating that Defendant Gordon

had been sued in federal court in Dallas, Texas in connection with the domain name

cheaters.com. (Pl.'s App. at 2.) However, the e-mail explicitly acknowledges that the complaint

had not been served on Defendant. (Id.)

   The summonses of the Original Complaint and the Amended Complaint were

never served on Defendant Gordon and the Returns of Service for those complaints were never

received by the Court. According to the evidence before the Court, Defendant Gordon's

California address was always on file with Network Solutions, Inc., and yet, by Plaintiff's own

admission, neither Defendant Gordon nor cheaters.com had been served with process with

respect to either lawsuit. (Def.'s App. at 44.)[7] Defendants were not required to scour the Court's

records in order to locate and read a copy of the complaint filed against them. Because

Defendant Gordon was never served, Defendant's duty to respond to the lawsuit was never

triggered. See Rogers v. Hartford Life and Acc. Ins. Co., 167 F.3d 933, 937 (5th Cir. 1999)

("Until the plaintiff serves the defendant, the defendant has no duty to answer the complaint and

the plaintiff cannot obtain a default judgment.") Defendant's failure to respond to the lawsuit

was excusable, and was not neglectful.

---

  [7] Service of process was not effected on Defendant cheaters.com pursuant to § 1125(d)(2)(A) and (B) either. This action was not filed in the judicial district in which the domain name registrar (Network Solutions, Inc.) is located (Herndon, Virginia). Contrary to Plaintiff's argument, courts have consistently held that § 1125(d)(2)(C) does not provide an alternate basis for *in rem* jurisdiction. See Mattel, Inc. v. Barbie-Club.com, No. 00 CIV 8705 DLC, 2001 WL 436207, at *2 (S.D.N.Y. 2001); FleetBoston Financial Corp. v. FleetBostonFinancial.com, 138 F. Supp.2d 121 (D. Mass. 2001); Cable News Network L.P., L.L.L.P. v. CNNews.com, 162 F. Supp.2d 484, 489 n.15 (E.D. Va. 2001). Moreover, Plaintiff's failure to effect service on Defendant cheaters.com serves as an additional basis for concluding that the default judgment is void.

### 3. Prejudice Suffered.

If a plaintiff will suffer prejudice by reopening an action, a court may deny the defendant's motion for relief from a default judgment. See Owens-Illinois, Inc. v. L & N Ltd., 191 F.R.D. 522, 526 (E.D. Tex. 2000) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 395 (1993)). The prejudice must involve more than the mere possibility of prejudice from delay inherent in every case. See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1280 (5th Cir. 1985). Likewise, delay in the collection of a judgment by a plaintiff or requiring a plaintiff to litigate the merits of the claim is insufficient prejudice to allow a default judgment to stand. See United States v. One Parcel of Real Property, 763 F.2d 181, 183 (5th Cir. 1985). However, "if the defaulting party can present evidence of prejudice that is substantial and cannot be relieved by imposing terms or conditions, the court may be persuaded to deny the motion . . ." 10A Wright & Miller, Federal Practice and Procedure § 2699.

Plaintiff contends that he will suffer prejudice because he has been using the internet site "cheaters.com" to market his television show for quite some time. (Pl.'s Resp. at 5-6.) The Court is not persuaded that this serves as a sufficient basis for denying the motion to set aside the default judgment. In fact, the Court has reason to believe that Plaintiff was not acting in good faith in seeking the default judgment in the first instance. There is no evidence that Plaintiff sent Defendants a copy of the Complaint at the address listed with Network Solutions, Inc. or that Plaintiff made any real attempt via e-mail or U.S. mail to encourage Defendants to respond to the lawsuit. Furthermore, Plaintiff pressed rapidly for the entry of the default and the subsequent judgment shortly after the answer date had expired. (See supra note 3.)

The Court is also disinclined to conclude that Plaintiff will suffer prejudice if the default judgment is set aside because Defendant has presented a persuasive argument that Plaintiff's conduct was culpable with respect to the entry of default and the default judgment. The Court finds it difficult to believe that Plaintiff did not know that Defendant resided in California and could not locate or serve Defendant at that location - especially when the evidence before the Court indicates that the documents on file with Network Solutions, Inc. list Defendant Gordon's California address as his address.  (Def.'s App. at 12-13, 39.)  Allowing the litigation to proceed on its merits would not substantially prejudice Plaintiff.

### 4.  Timing of the Motion for Relief.

Plaintiff contends that Defendant's motion to set aside the default judgment should be denied because it was not filed in a timely manner according to Rule 60(b) of the Federal Rules of Civil Procedure.  (Pl.'s Resp. at 6-7.)   While Rule 60(b)(1), (2), and (3) motions must be brought within one year after the date of judgment, motions brought pursuant to Rule 60(b)(4) (relief from judgment based on voidness) have no set time limit.  See Carter, 136 F.3d at 1006 ("[t]here is no time limit on an attack on a judgment as void.").  In Carter v. Fenner, the Fifth Circuit Court of Appeals held that "[t]he one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion."  Id. (citing New York Life Ins. Co. v. Brown, 84 F.3d 137, 142-43 (5th Cir.1996)).

Therefore, the Court hereby GRANTS Defendant's Motion to Set Aside Default Judgment and the default judgment against Defendants is hereby VACATED.  Because the

Court lacks jurisdiction over Defendant www.cheaters.com, the Court also GRANTS

Defendant's Rule 12(b)(2) Motion to Dismiss with respect to Defendant cheaters.com.

Moreover, because Plaintiff has argued, and the Court has already held, that the Court does not

have personal jurisdiction over Defendant Gordon, this action is no longer pending against

Defendant Gordon.  (See Mot., May 19, 2000; Order, May 30, 2000.)  Therefore, the Court

GRANTS Defendant's Motion to Dismiss with respect to Defendant Gordon.

## II. MOTION FOR SANCTIONS

In their Motion for Sanctions, Defendants refer to three examples of allegedly

sanctionable conduct committed by Plaintiff.  First, Defendants contend that Plaintiff filed a

fraudulent "Consent Motion."  Second, Defendants argue that Plaintiff failed to serve Defendants

with process and concealed his knowledge concerning Defendant Gordon's whereabouts and the

true location of Defendant Gordon in order to convince the Court that *in rem* jurisdiction was

proper.  Third, Defendants allege that Plaintiff misrepresented the law.  (Mot. for Sanctions at 1-

2.)

### A. Legal Standard.

Rule 11 of the Federal Rules of Civil Procedure provides:

[b]y presenting to the court [in] a pleading, written motion, or other paper, an
attorney or unrepresented party is certifying that to the best of the person's
knowledge, information, and belief, formed after an inquiry reasonable under the
circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to
cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by
existing law or by a nonfrivolous argument for the extension, modification, or
reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).

A violation of this section may result in the imposition of sanctions on the attorney. Fed. R. Civ. P. 11(c). By signing and filing a document with the Court, the attorney is implicitly certifying that he has complied with three affirmative duties: (1) that the attorney has conducted a reasonable inquiry into the facts that support the document; (2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and (3) that the modification is not interposed for purposes of delay, harassment, or increasing the costs of litigation. See Childs v. State Farm Mut. Auto. Ins. Co., 29 F.3d 1018, 1023-24 (5th Cir. 1994).

**A. Consent Motion.**

In their briefing, Defendants contend that because Plaintiff could not obtain personal jurisdiction over Defendant Gordon, Plaintiff invented a false basis for *in rem* jurisdiction over Defendant cheaters.com and filed misleading documents with the Court to obtain that jurisdiction. (Id. at 2-4.) Specifically, Plaintiff initially sought to proceed *in rem* against Defendant cheaters.com under § 1125(d)(2)(A), but only when Plaintiff realized jurisdiction was not proper under that section, Plaintiff sought to invoke jurisdiction under § 1125(d)(2)(C) (the "situs" provision).

Under Plaintiff's interpretation of this "situs" provision of the statute, the only

way Plaintiff would have been able to maintain this action in this judicial district is if he deposited documents with the Court that were "sufficient to establish control and authority regarding the disposition of the registration and use of the domain name." See 15 U.S.C. § 1125(d)(2)(C). To accomplish this, Plaintiff filed a motion that he mischaracterized as a "Consent Motion" and that falsely represented that "the parties" sought to give the Registry of the Court control over the domain name's registration and use. (Defs.' App. at 31.) By filing this "Consent Motion," Plaintiff was able to argue (albeit, unsuccessfully) that he had satisfied the *in rem* jurisdictional requirements of § 1125(d)(2)(C). (See Pl.'s Resp. at 4-5.)[8] The Court signed Plaintiff's accompanying proposed order that described the motion as a "consent motion by the parties to the action." (Id. at 33.)

However, as Defendants note, "Gordon **never** saw the motion, **never** was consulted about the motion, and certainly **never** consented to it." (Defs.' Mot. at 3 (emphasis in original).) Plaintiff purposefully misled the Court into believing that Defendants consented to the motion in his attempt to secure *in rem* jurisdiction over Defendant cheaters.com.

## B. No Service on Defendant Gordon.

In their briefing, Defendants focus in large part on the fact that Defendant Gordon was never served in this action. (Mot. for Sanctions at 12-13.) By Plaintiff's own admission, the summonses of the Original Complaint and the Amended Complaint were never served on Defendant Gordon and the Returns of Service for those complaints were never received by the

---

[8] Plaintiff argued that the documents necessary to establish control over the domain name were located in the Northern District of Texas and that *in rem* jurisdiction was proper under the "situs" provision of § 1125(d)(2)(C). (See Pl.'s Resp. to Mot. to Set Aside Default at 4-5.)

Court. (Def.'s App. to Mot. to Set Aside Default J'ment at 44.)[9]

In response, Plaintiff contends that he believed he was not required to locate and serve Defendant Gordon according to § 1125. Plaintiff contends that he reasonably believed § 1125 permitted him to proceed *in rem* against the domain name since he could not obtain *in personam* jurisdiction over Defendant Gordon in the State of Texas. See 15 U.S.C. § 1125(d)(2)(A)(ii)(I). Plaintiff correctly states that at the time this action was filed, the issue of whether the alleged mark owner must disprove the existence of *in personam* jurisdiction over a defendant in *any* judicial district in the United States or only in the forum where the domain name registrar is located, was unsettled. Plaintiff argued in his response to the motion to set aside the default judgment that he must disprove personal jurisdiction only in the jurisdiction in which the documents sufficient to establish control over the domain name were located (the "situs" provision of § 1125(d)(2)(C) - in this case, the Northern District of Texas. Plaintiff then argued that the "situs" provision of § 1125(d)(2)(C) provided an alternate basis for *in rem* jurisdiction, and that *in rem* jurisdiction in this case was predicated on that provision.

Plaintiff's interpretation of the statute is flawed in two key respects: (1) Plaintiff was required to disprove jurisdiction in any judicial district in the United States, not just in

---

[9] Based on the evidence before the Court, Plaintiff's contention that he was unable to locate and serve Gordon is incredible. Plaintiff maintained that he conducted an exhaustive and diligent search, yet could not locate Defendant Gordon anywhere in the United States. (Pl.'s First Am. Compl. ¶ 6; Defs.' App. at 38.) After reviewing the evidence before the Court, the Court concludes that Plaintiff's statement is disingenuous. First, Defendant Gordon's California contact information was on record with Network Solutions, Inc. - a company with which Plaintiff was undoubtedly familiar - from the time this lawsuit was filed until the present (Def.'s App. at 1-2, 97.) Moreover, on May 3, 2000, Plaintiff himself filed a document with the Court that contained Defendant Gordon's California address. (See id. at 34.) Additionally, Plaintiff had corresponded with Defendant Gordon via e-mail on more than one occasion after the lawsuit was filed, and never sought to get Defendant Gordon's mailing address from him during these exchanges. (See id. at 3.) The Court believes that Plaintiff did not make a sincere attempt to locate Defendant Gordon.

Texas; and (2) the situs provision does not provide an alternative means for asserting *in rem*

jurisdiction. However, although Plaintiff's interpretation of the law was "a stretch," it does not

necessarily follow that Plaintiff misrepresented the law to the Court. At the time the briefing

was filed, and even today, the law in this area is not well-settled, and these issues had not, and

still have not, been addressed or resolved by the Fifth Circuit.

In sum, the Court concludes that Plaintiff's tortured reading of the law and the

blatant misrepresentations contained in his "Consent Motion" allowed Plaintiff to manipulate the

judicial system to give him control over the domain name without having to fully litigate the

merits of this case. By filing this fraudulent motion and convincing the Court that the Parties

had consented to relinquish control and authority of the domain name to the Court, Plaintiff was

able to obtain a default judgment and possession and use of the domain name without serving or

notifying either defendant. This conduct is sanctionable. Therefore, Defendants' Motion for

Sanctions is hereby GRANTED and Plaintiff is hereby ordered to reimburse all attorneys' fees

and costs incurred by Defendants in connection with filing the motion to set aside the default

judgment and the motion for sanctions. Defendants are directed to file an affidavit with the

Court setting forth the time reasonably spent in connection with the motion to set aside the

default judgment and the motion for sanctions, the rate charged, and the total amount of fees and

expenses sought. If Plaintiff chooses to contest the fees and expenses sought, Plaintiff should

file its responsive documents within twenty (20) days after the filing of Defendants' documents.

Defendants will have fifteen (15) days to reply.

SO ORDERED, this _27th_ day of February, 2002.

_Jorge A. Solis_

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE